# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In re the Detention of: | No. 49781-6-II |
| CHARLES URLACHER, | |
| Appellant. | UNPUBLISHED OPINION |

LEE, A.C.J. — Charles Urlacher, a sexually violent predator (SVP), appeals the trial court's order entered after a jury trial, denying his conditional release to a less restrictive alternative plan (LRA), arguing that (1) the trial court's jury instructions on "best interest" and "adequately protect the community" were insufficient, (2) the trial court abused its discretion by not providing his proposed jury instructions defining "best interest" and "adequately protect the community," (3) the trial court's instructions violated his due process rights, and (4) the State committed prosecutorial misconduct. We affirm.

## FACTS

### A. COMMITMENT AND PETITION FOR CONDITIONAL RELEASE

Urlacher was committed to the Special Commitment Center (SCC) on McNeil Island as an SVP in 2011. Urlacher was diagnosed with pedophilic disorder[1] and narcissistic personality

---

[1] Pedophilic disorder refers to having a sexual interest in children.

disorder.[2] While at the SCC, he participated in sex offender treatment and other treatment addressing distorted thinking, and he made some improvements.

In 2015, Urlacher petitioned for a trial to determine whether he should be conditionally released to an LRA. The petition was granted and a trial date was set.

B.    PROPOSED LRA

Urlacher's proposed LRA included conditions that he would have to follow if the trial court granted conditional release. The conditions covered housing, treatment, supervision, and other areas.

For housing, Urlacher would live at an apartment complex in Tukwila. He would not leave his home, except for pre-approved activities during which he would be accompanied by a trained chaperone. Urlacher would have to submit requests for any travel, which would have to be approved by his supervising community corrections officer (CCO).

For treatment, Urlacher would participate in sex offender treatment with a certified treatment provider and comply with the provider's set treatment plan. The treatment provider would provide monthly reports to the court with Urlacher's progress.

For supervision, Urlacher would have an electronic monitoring device at all times, and a CCO from the Department of Corrections (DOC) would supervise him. Urlacher would provide departure and arrival times to the CCO when leaving his home. The CCO would also be alerted of any problems with the monitoring device.

---

[2] Narcissistic personality disorder refers to a "pervasive pattern of grandiosity, need for admiration, and lack of empathy." Clerk's Papers (CP) at 92 (quoting the Diagnostic and Statistical Manual of Mental Disorders (DSM-5) (5th ed. 2013)).

Additionally, Urlacher would not have any contact with persons under the age of 18 without court approval, and if approved, would be accompanied by a chaperone. Urlacher would also submit to polygraph and plethysmograph testing. .

C. TRIAL

    1.    Goldberg Testimony

The State called Dr. Harry Goldberg, a forensic psychologist, to testify. Dr. Goldberg had evaluated Urlacher four times. Dr. Goldberg testified that Urlacher's dynamic risk factors[3] were sexual interest in children, pre-occupation with sex, lack of emotional adult relationships, emotional congruence with children and awkwardness with adults, callousness, impulsiveness, resistance to rules and supervision, viewing himself as a victim, and coping in a destructive manner.

Dr. Goldberg opined that release to the proposed LRA would not be in Urlacher's best interest. Dr. Goldberg defined an LRA to be in a person's "best interest" when the person has demonstrated consistent motivation and skills to be successful once released to an LRA. He had seen treatment gains in Urlacher but believed it was premature to think that Urlacher was ready for the next step. Dr. Goldberg had concerns about Urlacher's ability to manage his problems with transparency in treatment, arousal to thoughts of children, and accepting feedback.

Dr. Goldberg also opined that the conditions of the proposed LRA would not adequately protect the community. He defined "adequately protect the community" as a plan that would eliminate the chance of re-offense. Dr. Goldberg believed that the adequacy of chaperones was a

---

[3] Dynamic risk factors are areas of risk.

fluid situation and that the travel aspects were not fully fleshed out. Dr. Goldberg used his clinical judgment to form his opinions.

On cross-examination, Dr. Goldberg was asked:

Q    And in your interpretation of the phrase "adequate to protect the community," in order to be adequate, we must protect the community from all risks of sexual violent re-offense; is that right?

A    Correct.

Q    In other words, in your interpretation of the phrase 'adequate to protect the community,' we must make it a 0 percent risk of re-offense; is that right?

A    Correct.

Verbatim Report of Proceedings (VRP) (Oct. 6, 2016) at 358.

2.    Spizman Testimony

Urlacher called Dr. Paul Spizman, a licensed psychologist, to testify. Dr. Spizman met with Urlacher twice. Although several dynamic risk factors came up as areas of concern from time to time, Dr. Spizman believed that Urlacher had made a lot of gains and was ready for the next step.

Dr. Spizman opined that the proposed LRA was in Urlacher's best interest and adequate to serve his treatment needs. Dr. Spizman defined "best interest" as whether the individual was progressing in treatment and ready for the next step in moving into the community. Urlacher had demonstrated gains in managing his dynamic risk factors and made significant progress in treatment, so placing him in the community would allow him to further those gains, establish himself in the community, and develop his support network. Dr. Spizman believed that Urlacher was ready to move on, and the program in place would continue to incentivize successful treatment.

Dr. Spizman also opined that the proposed LRA conditions were adequate to protect the community. For community protection, Dr. Spizman considered the individual themselves, whether the person understood their dynamic risk factors and had interventions in place to adequately contain them, and other factors such as the restrictions imposed and the support network in place. Urlacher had demonstrated a strong ability to manage his dynamic risk factors, and the proposed conditions, such as electronic monitoring, pre-approval for travel, and CCO supervision, would adequately protect the community.

3.      Urlacher Testimony

Urlacher also testified. Urlacher had molested his sons. He told his younger son that talking about sex was natural and that doing it was okay; this was a part of his grooming process to obtain immediate sexual gratification. Urlacher also groomed other children who were his sons' friends, and molested and raped them. Urlacher testified that "grooming" refers to "[s]etting somebody up for an action whether it be legal or illegal" and "breaking down natural barriers that a person . . . would have."[4] VRP (Oct. 3, 2016) at 57. He further testified that sex offender treatment was an integral part of the proposed LRA and that he had signed an agreement with a therapist to continue treatment. Urlacher believed he was ready for conditional release. The trial court admitted Urlacher's proposed LRA into evidence.

---

[4] On cross-examination, Dr. Goldberg testified that "grooming" meant developing trust with the victim and their family with the goal of child molestation. Dr. Spizman testified that "grooming" involved setting up an individual.

4.      Jury Question

The jury was allowed to present questions to the trial court to ask the witnesses. The jury submitted one question for Dr. Spizman. The question asked, "Could Urlacher's testimony be him grooming the jury?" VRP (Oct. 11, 2016) at 638. The trial court stated that the question "seem[ed] a bit argumentative" and declined to pose the question to Dr. Spizman. VRP (Oct. 11, 2016) at 638.

C.      JURY INSTRUCTIONS

Before the conclusion of trial, Urlacher proposed jury instructions that included definitions of "best interest" and "adequately protect the community." CP at 456-57. Urlacher's proposed instruction for "best interest" stated:

> In evaluating whether or not the proposed less restrictive alternative plan is in the Respondent's best interests, you are to consider whether the proposed less restrictive alternative plan properly incentivizes successful treatment participation and whether it is the appropriate next step in the Respondent's treatment.

CP at 456. Urlacher's proposed instruction for "adequately protect the community" stated:

> When evaluating whether the Respondent's proposed less restrictive alternative plan is "adequate to protect the community", you are to consider the individual aspects of the Respondent's release plan, rather than the Respondent himself. It is not necessary that all risk be removed in order for the proposed less restrictive alternative plan to be "adequate to protect the community".

CP at 457. The State objected to both jury instructions.

The trial court declined to give the proposed jury instructions. For "best interest," the trial court stated that "some kind of instruction might be useful" but declined to give the proposed instruction because it was not an approved instruction. VRP (Oct. 12, 2016) at 965. For "adequate to protect the community," the trial court said that the phrase would be easily understood by the

6

jury. The trial court ruled that, based on *Bergen*,[5] the proposed jury instructions were not necessary.

The trial court instructed the jury that

> [t]o establish that the respondent's proposed less restrictive alternative placement should not be granted, the State must prove one of the following beyond a reasonable doubt:

> (1) That the proposed less restrictive alternative placement plan is not in the respondent's best interests; or

> (2) That the proposed less restrictive alternative placement plan does not include conditions that will adequately protect the community.

CP at 668. The trial court also instructed the jury that the community protection factor did not require "that all risk be removed." CP at 671. The trial court further instructed that Urlacher was previously found to be an SVP, which meant he was "likely to engage in predatory acts of sexual violence if not confined to a secure facility," and that this was not at issue in the case. CP at 666.

D.     CLOSING AND REBUTTAL ARGUMENTS

The State argued in closing that the jury was tasked with answering whether Urlacher's proposed LRA was in his best interest and whether the conditions of that plan were adequate to protect the community.

In his closing argument, Urlacher told the jury that Dr. Goldberg's testimony was contrary to the law. He argued that Dr. Goldberg's standard for conditions to be adequate to protect the community was "that the risk to reoffend must be reduced to zero." VRP (Oct. 13, 2016) at 1005.

---

[5] *In re Det. of Bergen*, 146 Wn. App. 515, 195 P.3d 529 (2008), *review denied*, 165 Wn.2d 1041 (2009).

Urlacher reminded the jury of the court's instruction that not all risk had to be removed for an LRA plan to be adequate to protect the community.

Urlacher also reminded the jury that Dr. Spizman believed that the proposed LRA was in his best interest and was adequate to protect the community. Regarding housing, Urlacher stated that the apartment complex was not just housing, but a ministry, and that he and the community "really could not ask for a better housing transitional plan in the community, period." VRP (Oct. 13, 2016) at 1018. The ministry and DOC had a good working relationship; others were living there that were being checked on by DOC. The ministry also had a transition program and provided supervision through its leadership team. Such housing was the next step.

On rebuttal argument, the State discussed Urlacher's proposed LRA conditions on housing:

> [Urlacher] tells you that the housing is the gold standard and you couldn't ask for anything better. Well, you'll have to determine that because at the end of the day these are all the questions that you're being asked to do as 12 people from our community, that you come with your life experiences and you bring your collective conscious together and you talk about these things and you say, because best interests and adequate to protect the community are not defined in your jury instructions, you, as the trier of fact, will be the individuals who will decide amongst yourselves how you're going to decide what that means as it applies to Mr. Urlacher.
>
> There's no thought whatsoever by [the apartment manager] as to who he might place as Mr. Urlacher's roommate: Well, the next person up, we're going to put them in there; if there's an empty room, well, we'll put Mr. Urlacher there by himself until I get a different person.

VRP (Oct. 13, 2016) at 1033-34. The State then concluded by arguing:

> So take the opportunity to use your recollection of the evidence, your common sense. Don't leave it here in the jury box. Use it as you deliberate with your fellow jurors, and we would submit to you that you should not be fooled by Charles Urlacher. You should not be subject to his grooming, that, in fact, the plan that he has proposed is not in his best interests and that the conditions that he currently has proposed before you are not adequate to protect the community. And

8

with that we're asking that you answer each of these questions in the affirmative, that has the State proven beyond a reasonable doubt, that the answer is yes.

VRP (Oct. 13, 2016) at 1040-41. Urlacher did not object to the State's arguments.

E.     VERDICT AND APPEAL

The jury returned a verdict specifically finding that Urlacher's proposed LRA was not in his best interest and did not contain conditions that would adequately protect the community. Thus, Urlacher's petition for conditional release was denied.

Urlacher appeals.

ANALYSIS

A.     JURY INSTRUCTIONS

Urlacher argues that the trial court's instructions on "best interest" and "adequately protect the community" were insufficient and violated his due process rights. Urlacher also argues that the trial court abused its discretion by failing to give his proposed jury instructions on these terms. We hold that the jury instruction on "adequately protect the community" was sufficient and that the trial court did not abuse its discretion by not giving Urlacher's proposed jury instruction.[6]

At a trial to determine if an SVP should be conditionally released to a less restrictive alternative, the State has the burden "to prove beyond a reasonable doubt that conditional release to any proposed less restrictive alternative either: (i) Is not in the best interest of the committed

---

[6] Urlacher raises a number of arguments regarding the "best interest" jury instruction and the "best interest" standard itself. However, the State only needed to prove that the proposed LRA was not in Urlacher's best interest *or* did not include conditions that would adequately protect the community. RCW 71.09.090(3)(d). Because the jury found that Urlacher's proposed LRA did not contain conditions that would adequately protect the community and we affirm on the community protection prong, we do not reach Urlacher's claims regarding "best interest."

person; *or* (ii) does not include conditions that would adequately protect the community." RCW 71.09.090(3)(d) (emphasis added). "Adequately protect the community" is not defined by statute. *See* RCW 71.09.020.

1.      Sufficiency of Jury Instructions

Urlacher argues that the trial court's instruction on "adequately protect the community" was insufficient. We disagree.

a.      Applicable standard of review

We review the sufficiency of jury instructions de novo. *State v. Walker*, 182 Wn.2d 463, 481, 341 P.3d 976, *cert. denied*, 135 S. Ct. 2844 (2015). We consider jury instructions in the context of the instructions as a whole. *In re Det. of Taylor-Rose*, 199 Wn. App. 866, 879-80, 401 P.3d 357 (2017), *review denied*, 189 Wn.2d 1039 (2018). Jury instructions are generally sufficient if they allow each party to argue its theory of the case, are not misleading, and properly inform the trier of fact of the applicable law when read as a whole. *Id.* at 879; *In re Det. of Wright*, 138 Wn. App. 582, 586, 155 P.3d 945 (2007), *review denied*, 162 Wn.2d 1017 (2008).

Urlacher argues that we should apply a heightened standard of review and determine if the trial court's jury instructions made the law "'manifestly apparent to the average juror.'" Br. of Appellant at 13 (quoting *State v. Kyllo*, 166 Wn.2d 856, 864, 215 P.3d 177 (2009)). We decline to do so.

We have previously rejected application of the "manifestly apparent" standard to review the sufficiency of jury instructions in the civil commitment context.[7] *Taylor-Rose*, 199 Wn. App.

---

[7] The "manifestly apparent" standard has been applied to only self-defense and double jeopardy related jury instructions in criminal cases. *See State v. Fuentes,* 179 Wn.2d 808, 824, 318 P.3d

at 880 n.2. Instead, the standard remains whether the instructions allow each party to argue its theory of the case, are not misleading, and properly inform the trier of fact of the applicable law when read as a whole. *Id*. at 879; *Wright*, 138 Wn. App. at 586.

Urlacher also argues that procedural and substantive due process require us to apply the "manifestly apparent" standard. We disagree.

"Procedural due process refers to the procedures that the government must follow before it deprives a person of life, liberty, or property." *Dellen Wood Prod., Inc. v. Dep't of Labor & Indus.*, 179 Wn. App. 601, 626-27, 319 P.3d 847, *review denied*, 180 Wn.2d 1023 (2014). "Substantive due process protects against arbitrary and capricious government action." *State v. Shelton*, 194 Wn. App. 660, 666, 378 P.3d 230 (2016), *review denied*, 187 Wn.2d 1002 (2017).

Here, Urlacher, without persuasive legal citation or supporting authority, merely states that the standard for reviewing the sufficiency of jury instructions is a procedure that deprives a person of life, liberty, or property, and is subject to the test in *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976). Furthermore, Urlacher does not provide persuasive

---

257 (2014) (double jeopardy case); *State v. Mutch*, 171 Wn.2d 646, 664, 254 P.3d 803 (2011) (double jeopardy case); *Kyllo*, 166 Wn.2d at 864 (self-defense case); *State v. Walden*, 131 Wn.2d 469, 473, 932 P.2d 1237 (1997) (self-defense case); *State v. LeFaber*, 128 Wn.2d 896, 900, 913 P.2d 369 (1996), *abrogated by*, 167 Wn.2d 91 (2010) (self-defense case); *State v. Allery*, 101 Wn.2d 591, 595, 682 P.2d 312 (1984) (self-defense case); *see also State v. McCreven*, 170 Wn. App. 444, 462, 284 P.3d 793 (2012) (self-defense case), *review denied*, 176 Wn.2d 1015 (2013); *State v. Carter*, 156 Wn. App. 561, 565, 234 P.3d 275 (2010) (double jeopardy case); *State v. Marquez*, 131 Wn. App. 566, 575, 127 P.3d 786 (2006) (self-defense case); *State v. Harris*, 122 Wn. App. 547, 554, 90 P.3d 1133 (2004) (self-defense case); *State v. Fischer*, 23 Wn. App. 756, 759, 598 P.2d 742, *review denied*, 92 Wn.2d 1038 (1979) (self-defense case). Our Supreme Court has made it clear that SVP commitment proceedings are not criminal proceedings. *In re Det. of Stout*, 159 Wn.2d 357, 369, 150 P.3d 86 (2007). *See also In re Det. of Peterson*, 138 Wn.2d 70, 91, 980 P.2d 1204 (1999) (SVP proceedings "are civil, not criminal.").

supporting legal authority for his argument that the standard to review the sufficiency of jury instructions is a government action or statutory scheme subject to a substantive procedural due process analysis.[8]

Thus, we decline to impose the "manifestly apparent" standard. Rather, we review the sufficiency of the jury instructions by determining whether the instructions allowed each party to argue its theory of the case, were not misleading, and properly informed the trier of fact of the applicable law when read as a whole.

b. Jury instruction sufficient

Urlacher argues that the trial court's instruction on "adequately protect the community" relieved the State of its burden to prove that his proposed LRA plan did not include conditions that would adequately protect the community. However, the record fails to support this argument.

The trial court's instruction on "adequately protect the community" told the jury that the State had the burden to prove the proposed LRA plan did not contain conditions that would

---

[8] Urlacher cites to *Wilcox v. Basehore,* 187 Wn.2d 772, 782, 389 P.3d 531 (2017), and *Kyllo*, 166 Wn.2d at 864, to argue that procedural and substantive due process require application of the "manifestly apparent" standard. However, we do not find those cases persuasive because *Wilcox* and *Kyllo* make no mention of procedural or substantive due process, respectively. *See Wilcox,* 187 Wn.2d at 782, *see also Kyllo*, 166 Wn.2d at 864.

Urlacher also cites to *State v. McCuistion*, 174 Wn.2d 369, 387, 275 P.3d 1092 (2012) *cert denied*, 568 U.S. 1196 (2013), and *U.S. v. Playboy Entm't Grp., Inc.*, 529 U.S. 803, 813, 120 S. Ct. 1878, 146 L. Ed. 2d 865 (2000), for the proposition that substantive due process requires civil commitment statutes to be narrowly drawn to serve a compelling state interest and that the government must use the least restrictive means to meet such interests. However, the standard to review the sufficiency of jury instructions is not a statute that the government is using to serve its interests. Thus, *McCuistion* and *Playboy* do not support Urlacher's claim to apply the "manifestly apparent" standard.

adequately protect the community. Thus, the trial court's instruction did not relieve the State of its burden of proof, properly informed the jury of the applicable law, and was not misleading.

Furthermore, we note that the trial court's instruction on "adequately protect the community" allowed Urlacher to argue his theory of the case. Urlacher argued that, under his proposed LRA, there was "amazing accountability that is going to ensure conditions that are going to adequately protect the community"; there would be layers of protection for the community and for accountability; there were legal requirements of supervision and the plan would include GPS monitoring, sex offender registration, notification, pre-approved travel, chaperones, searches, and polygraphs; DOC was currently supervising others in the apartment complex he was to live in; and there would be a number of people available to support him. VRP (Oct. 13, 2016) at 1014. Thus, the trial court's instruction did not inhibit Urlacher's arguments that his proposed LRA plan adequately protected the community, and Urlacher's challenge fails.

2. Refusal to Provide Requested Instruction

Urlacher argues that the trial court erred by failing to give his proposed jury instruction defining "adequately protect the community." We disagree.

a. Legal principles

We review a trial court's refusal to provide a proposed jury instruction for an abuse of discretion. *In re Det. of Pouncy*, 168 Wn.2d 382, 390, 229 P.3d 678 (2010). A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds. *Taylor-Rose*, 199 Wn. App. at 880. A decision is based on untenable grounds when it relies on an incorrect interpretation of the law or applies the wrong legal standard. *State v. R.G.P.*, 175 Wn. App. 131, 136, 302 P.3d 885, *review denied*, 178 Wn.2d 1020 (2013). A trial court properly refuses an

instruction that does not correctly state the law. *In re Det. of Bergen*, 146 Wn. App. 515, 533, 195 P.3d 529 (2008), *review denied*, 165 Wn.2d 1041 (2009).

Whether words used in an instruction require definition is a matter of discretion to be exercised by the trial court. *Pouncy*, 168 Wn.2d at 390. Courts do not need to define words and expressions that are of ordinary understanding. *Id*.

b.      Adequately protect the community

Urlacher proposed a jury instruction defining "adequately protect the community" as requiring the jury to "consider the individual aspects of [Urlacher's] release plan, rather than [Urlacher] himself." CP at 457. Urlacher argues that without his proposed jury instruction, jurors were allowed to deny his conditional release without proof that the plan provided inadequate protection to the community. We disagree.

In *Bergen*, an SVP appealed the trial court's refusal to give a proposed jury instruction defining "adequate community safety." 146 Wn. App. at 532. The *Bergen* court held that the trial court did not abuse its discretion by declining to give the proposed instruction because it was erroneous. *Id*. at 533-34. The court also stated that "adequate to protect the community" was not defined in the statute and should be given its ordinary meaning. *Id*. at 534.[9]

---

[9] Urlacher also makes a general argument that *Bergen* does not control because (1) the *Bergen* court did not address whether the trial court's jury instructions relieved the State of its burden of proof, and (2) the *Bergen* court incorrectly concluded that the statutory language conveyed the relevant legal standard.

Urlacher is correct that the *Bergen* court did not address jury instructions relieving the State of its burden of proof. But we do not rely on *Bergen* in our determination of Urlacher's claim that the jury instruction's relieved the State of its burden of proof.

Here, the trial court instructed the jury that it was not necessary that all risk be removed for the proposed LRA to be "adequate to protect the community." The trial court also instructed the jury that the State had the burden to prove that Urlacher's proposed LRA did not contain conditions that would "adequately protect the community." The trial court declined to give Urlacher's proposed jury instruction defining "adequately protect the community" because the plain meaning of that phrase would be understood by the jury and the *Bergen* court stated that instructions were not necessary. The trial court did not abuse its discretion by not giving Urlacher's proposed jury instruction.

3.      Due Process Claims

Urlacher argues that the trial court violated his due process rights because the court's instruction on "adequately protect the community" relieved the State of its burden of proof, the trial court failed to follow statutory procedure, and the jury was not instructed on the "element" of "adequately protect the community." We disagree.

a.      Relieving the State of its burden of proof

We review constitutional challenges de novo. *State v. Johnson*, 180 Wn.2d 295, 300, 325 P.3d 135 (2014). A jury instruction may violate due process if it relieves the State of the burden

---

As to Urlacher's second argument, the *Bergen* court did not incorrectly conclude that the statutory language adequately conveyed the relevant legal standard. RCW 71.09.090(3)(d) requires the State to prove that the proposed LRA is not in the SVP's "best interest" or does not contain conditions that would "adequately protect the community." "Best interest" and "adequately protect the community" are not defined by statute and "adequately protect the community" is a commonly understood phrase that does not require a definition. *See Infra* Section A.3.c. Urlacher fails to cite to any legal authority to support the notion that a court errs by using the statutory language to convey the relevant legal standard. Given the language of the statute, the *Bergen* court properly concluded that the statutory language adequately conveyed the correct legal standard.

of proving an element of a crime. *State v. Fedorov*, 181 Wn. App. 187, 199, 324 P.3d 784, *review denied*, 181 Wn.2d 1009 (2014).

Here, assuming without deciding that the "adequately protect the community" prong is an "element," the instruction did not relieve the State of its burden of proof. The trial court specifically instructed the jury that to "establish that [Urlacher's] proposed less restrictive alternative placement should not be granted, the State must prove . . . beyond a reasonable doubt" that "the proposed less restrictive alternative placement plan does not include conditions that will adequately protect the community." CP at 668. This instruction clearly placed the burden of proof on the State. Thus, the trial court's instruction on "adequately protect the community" did not relieve the State of its burden of proof.

b.      Failure to comply with statutory procedure

Urlacher argues that the trial court deviated from the statutory procedure by failing to properly instruct the jury with his proposed instruction and, thus, violated his due process rights. We disagree.

Urlacher merely states that the trial court deviated from the statutory procedure by failing to properly instruct the jury, but fails to point to the requisite statutory *procedure* he claims the trial court deviated from. Urlacher also fails to cite to any statute or case that defines "adequately protect the community" in the form proposed in his jury instruction. Therefore, we hold that Urlacher's challenge fails.

c.       Instruction on "elements"

Urlacher argues that the trial court violated his due process rights by not instructing the jury on the "element" of "adequately protect the community," citing *State v. Smith*, 131 Wn.2d 258, 930 P.2d 917 (1997).  We disagree.

In *Smith*, the trial court omitted an element from the "to convict" instructions in a criminal prosecution.  131 Wn.2d at 262.  On appeal, our Supreme Court stated that "to convict" instructions must contain all of the elements of the crime.  *Id.* at 263.

Urlacher's reliance on *Smith* is misplaced.  SVP proceedings and criminal proceedings are not the same.  SVP proceedings are civil, not criminal.  *In re Det. of Leck*, 180 Wn. App. 492, 503, 334 P.3d 1109, *review denied*, 181 Wn.2d 1008 (2014).  *Smith* addressed the omission of an essential element of a crime from a "to convict" instruction, while Urlacher raises issue with the trial court's refusal to give a definitional instruction for the phrase "adequately protect the community."

Furthermore, even if "adequately protect the community" was an element, Urlacher's proposed jury instruction was definitional.  The giving of definitional instructions is discretionary. *Pouncy*, 168 Wn.2d at 390.  Courts do not need to define words and expressions that are of ordinary understanding.  *Id*.  A definitional instruction was not necessary here because "adequately protect the community" is commonly understood and does not require a definition.  "Adequate to protect the community" should be given its ordinary meaning.  *Bergen*, 146 Wn. App. at 534.  Therefore, we hold that this claim fails.

B.    PROSECUTORIAL MISCONDUCT

Urlacher argues that the State committed prosecutorial misconduct by misstating the law and appealing to the passions and prejudices of the jury. Urlacher also argues cumulative error from the State's misconduct. We disagree.

1.    Legal Principles

To prevail on a claim of prosecutorial misconduct, a defendant must establish that the prosecutor's conduct was improper and prejudicial. *State v. Emery*, 174 Wn.2d 741, 756, 278 P.3d 653 (2012). We first determine whether the prosecutor's conduct was improper. *Id.* at 759. If the prosecutor's conduct was improper, the question turns to whether the misconduct resulted in prejudice. *Id.* at 760. Prejudice is established by showing a substantial likelihood that such misconduct affected the verdict. *Id.*

Where a defendant does not object at trial, he is deemed to have waived any error unless the prosecutor's misconduct was so flagrant and ill-intentioned that an instruction could not have cured any resulting prejudice. *Id.* at 760-61. Under this heightened standard, the defendant must show that "(1) 'no curative instruction would have obviated any prejudicial effect on the jury' and (2) the misconduct resulted in prejudice that 'had a substantial likelihood of affecting the jury verdict.'" *Id.* at 761 (quoting *State v. Thorgerson*, 172 Wn.2d 438, 455, 258 P.3d 43 (2011)). In making that determination, we "focus less on whether the prosecutor's misconduct was flagrant or ill intentioned and more on whether the resulting prejudice could have been cured." *Id.* at 762. To analyze prejudice, we look at the comments in the context of the total argument, the issues in the case, the evidence, and the instructions given to the jury. *State v. Warren*, 165 Wn.2d 17, 28, 195

P.3d 940 (2008), *cert. denied*, 556 U.S. 1192 (2009). The jury is presumed to follow the trial court's instructions. *State v. Kirkman*, 159 Wn.2d 918, 928, 155 P.3d 125 (2007).

2.      Misstating the Law

Urlacher argues that the State committed misconduct by misstating the law. Specifically, Urlacher takes issue with the State's argument to the jury that "because best interests and adequate to protect the community are not defined in your jury instructions, you, as the trier of fact, will be the individuals who will decide amongst yourselves how you're going to decide what that means as it applies to Mr. Urlacher." VRP (Oct. 13, 2016) at 1034. We disagree.

A prosecutor commits misconduct by misstating the law. *State v. Allen*, 182 Wn.2d 364, 373, 341 P.3d 268 (2015). Such misstatements have "grave potential to mislead the jury." *State v. Davenport*, 100 Wn.2d 757, 763, 675 P.2d 1213 (1984). The court shall declare the law, and legal questions are decided by the court, not the jury. *State v. Clausing*, 147 Wn.2d 620, 629, 56 P.3d 550 (2002). Statements as to the law in closing argument are to be confined to the law set forth in the instructions. *State v. Huckins*, 66 Wn. App. 213, 217, 836 P.2d 230 (1992), *review denied*, 120 Wn.2d 1020 (1993).

Here, the State did not misstate the law when it argued that the jury would decide what "best interest" and "adequate to protect the community" meant as it applied to Urlacher. The record shows that the State made the challenged argument in rebuttal. Before making the argument in question, the State argued to the jury that "[Urlacher] tells you that the housing is the gold standard and you couldn't ask for anything better" and that "you'll have to determine that because at the end of the day these are all the questions that you're being asked to do as 12 people from our community, that you come with your life experiences and you bring your collective conscious

together and you talk about these things." VRP (Oct. 13, 2016) at 1033-34. The State then said "because best interests and adequate to protect the community are not defined in your jury instructions, you, as the trier of fact, will be the individuals who will decide amongst yourselves how you're going to decide what that means as it applies to Mr. Urlacher." VRP (Oct. 13, 2016) at 1034. Read in context, the State correctly informed the jury that "best interest" and "adequate to protect the community" were not defined by the jury instructions, and that the jury would decide whether those factors were satisfied, as they pertained to Urlacher's proposed housing.

Urlacher also argues that the State improperly asked the jury to choose their own definitions of those "elements." However, the record proves otherwise. Read in context, the State made the challenged argument to the jury within its overall argument about the housing situation in Urlacher's proposed LRA. The State argued that the jury would have to consider whether the proposed housing situation was in Urlacher's "best interest" and "adequate to protect the community." Thus, the State did not misstate the law by asking the jury to choose its own definition of "best interest" and "adequate to protect the community."

Furthermore, even if the State's argument was improper, Urlacher fails to show that no curative instruction would have obviated any prejudicial effect or that the misconduct had a substantial likelihood of affecting the jury verdict. *Emery*, 174 Wn.2d at 761. In fact, the jury was instructed that "the lawyers' remarks, statements, and arguments [were] not evidence" and that it "should disregard any remark, statement, or argument that is not supported by the evidence or the law as [the court had] explained." CP at 662. The jury is presumed to follow the court's instructions. *Kirkman*, 159 Wn.2d at 928. Therefore, we hold that this claim fails.

3.      Appealing to the Passions and Prejudices of the Jury

Urlacher also argues that the State committed prosecutorial misconduct by appealing to the passions and prejudices of the jury. Specifically, Urlacher takes issue with the State's argument that "[y]ou should not be subject to his grooming, that, in fact, the plan that he has proposed is not in his best interests and that the conditions that he currently has proposed before you are not adequate to protect the community." VRP (Oct. 13, 2016) at 1040. We agree that the prosecutor's argument was improper, but the error was waived.

Prosecutors commit misconduct when they use arguments designed to arouse the passions or prejudices of the jury. *In re Pers. Restraint of Glasmann*, 175 Wn.2d 696, 704, 286 P.3d 673 (2012). Such arguments create a danger that the jury may convict for reasons other than the evidence. *State v. Ramos*, 164 Wn. App. 327, 338, 263 P.3d 1268 (2011).

Here, the State argued on rebuttal, "You should not be subject to his grooming, that, in fact, the plan that he has proposed is not in his best interests and that the conditions that he currently has proposed before you are not adequate to protect the community." VRP (Oct. 13, 2016) at 1040. The jury had previously heard testimony that Urlacher used a grooming process to obtain sexual gratification and that "grooming" referred to "[s]etting somebody up for an action whether it be legal or illegal" and "breaking down natural barriers that a person . . . would have." VRP (Oct. 3, 2016) at 57. The jury also heard that "grooming" meant developing trust with the victim and their family with the goal of child molestation. By arguing that the jury should not be "subject to [Urlacher's] grooming," the State framed its argument as if the members of the jury were Urlacher's potential victims; the State did not merely ask the jury to not be fooled. Such an

argument is designed to arouse the passions or prejudices of the jury, and was improper. *Glasmann*, 175 Wn.2d at 704.

Nonetheless, Urlacher failed to object and waived any error. When a defendant fails to object, he must show that "(1) 'no curative instruction would have obviated any prejudicial effect on the jury' and (2) the misconduct resulted in prejudice that 'had a substantial likelihood of affecting the jury verdict.'" *Emery*, 174 Wn.2d at 761. Urlacher fails to show that a curative instruction would not have obviated any prejudicial effect. If Urlacher had objected, the trial court could have instructed the jury to disregard the State's argument. Therefore, we hold that Urlacher's claim fails.

4. Cumulative Error

Urlacher argues that the cumulative effect of the State's misconduct warrants reversal. "The cumulative error doctrine applies where a combination of trial errors denies the accused of a fair trial, even where any one of the errors, taken individually, would be harmless." *In re Pers. Restraint of Cross*, 180 Wn.2d 664, 690, 327 P.3d 660 (2014). However, here, the State only committed one instance of improper conduct, which was not objected to, and Urlacher fails to show any resulting prejudice as the trial court instructed the jury that the prosecutor's statements were not evidence to be considered and should be disregarded if not supported by the evidence or the law as instructed. Therefore, we hold that this challenge fails.

APPELLATE COSTS

Urlacher argues that we should decline to impose appellate costs against him if the State substantially prevails. We decline to determine the issue at this time and hold that if the State

No. 49781-6-II

makes a request for appellate costs, Urlacher may challenge that request before a commissioner of this court under RAP 14.2.

CONCLUSION

We affirm the trial court's order denying Urlacher's petition for conditional release to an LRA.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____, A.C.J.
Lee, A.C.J.

We concur:

_____
Worswick, J.

_____
Sutton, J.