# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In the Matter of the Detention of:<br><br>RANDY R. SMITH,<br><br><div align="center">Appellant.</div> | No. 54505-5-II<br><br>UNPUBLISHED OPINION |

CRUSER, J. – A jury found that Randy Smith was a sexually violent predator (SVP). He appeals his commitment, arguing that (1) the trial court commented on the evidence by instructing jurors that his prior offense was a "crime of sexual violence,"[1] (2) the trial court erred by not instructing jurors that he could be subject to a new SVP petition for a recent overt act (ROA), (3) the trial court erred by refusing to substitute the phrase "sexually violent predator" with the phrase "criteria for civil commitment" in the jury instructions,[2] and (4) the trial court erred by allowing the State's expert to testify about the injuries suffered by the victim from his prior offense.

We hold that (1) Smith failed to preserve his challenge to the trial court's instruction that Smith's prior offense was a "crime of sexual violence" on the basis that it was a comment on the evidence, (2) Smith failed to preserve his argument that the trial court erred by not instructing

---

[1] Br. of Appellant at 7.

[2] Br. of Appellant at 32.

jurors that Smith could be subject to a new SVP petition, (3) the trial court did not err by refusing to substitute the phrase "sexually violent predator" in the jury instructions, and (4) it was not error for the trial court to admit the expert testimony regarding the injuries suffered by the victim from Smith's prior offense, but even if it was error, admission of the testimony was harmless. Accordingly, we affirm Smith's commitment as an SVP.

## FACTS

Smith has two criminal convictions for sex offenses. In 1990, he was found guilty of first degree child rape. In 2013, he pleaded guilty to voyeurism. In 2018, before the end of Smith's sentence for voyeurism, the State filed an SVP petition against him. The State used Smith's 1990 conviction as the predicate sexually violent offense in its petition.

### I. MOTIONS IN LIMINE

Prior to trial, Smith moved in limine to exclude evidence of the injuries sustained by the victim in his 1990 offense. Smith argued that the evidence was hearsay, that it was unreasonable for the State's expert to rely on it, and that the evidence was "not particularly relevant and, as a result, the prejudice outweigh[ed] the probative value." Clerk's Papers (CP) at 111. The State opposed this motion, arguing that the injuries were relevant to its expert's opinions regarding Smith's emotional and volitional impairments and Smith's "callousness." *Id.* at 421. The expert indicated that there was enough evidence, aside from the victim's injuries, for him to render the same opinion without that evidence. The trial court denied Smith's motion "for the reasons articulated by the State in their response. I will allow evidence regarding the physical injury. The proffer provided by the State is sufficient for that to be admitted." Report of Proceedings (RP) at 38.

In addition, Smith moved to substitute the phrase "sexually violent predator" with the phrase "criteria for civil commitment" throughout the proceedings. CP at 115. In support of his motion, Smith provided the trial court with research showing that the term "sexually violent predator" affects juror decisions, arguing that the phrase itself is prejudicial and should be replaced during the trial. *Id.* at 116. The trial court also denied this motion, stating, "I understand the concern. That is the term that the law uses." RP at 44.

## II. TRIAL TESTIMONY

### A. Testimony of Smith

At trial, Smith testified via video deposition. His testimony included factual details surrounding both of his sexual offenses. Regarding the 1990 offense, Smith testified that he had been at a party and was having sexual relations with the woman who invited him. The two had been separated, "which made [Smith] mad," and he passed out. CP at 509. When he woke up, he "started looking through the house for females" and found a three-year-old girl in her bedroom. *Id.* Smith laid her on the floor, covered her mouth, and vaginally raped her for 10 to 15 minutes. He attributed the rape to his being angry with the other people at the party, and said that he heard voices telling him to "hurt somebody" and "make them pay for . . . doing what they did." *Id.* at 574. A jury found Smith guilty of first degree child rape, and he received an exceptional sentence.

While in prison for that offense, Smith received an infraction for sexual harassment towards staff. Smith was attracted to a female correctional officer because she was "small, petite" and looked young for her age. *Id.* at 524. In an effort to "compromise staff for sexual reasons," he attempted to give her gifts, like jewelry that he had made. *Id.* He was released from prison in 2008.

3

In 2012, Smith began fantasizing about young girls. About twice a week, Smith walked around stores to look for young girls and secretly photograph them. He would delete the photos after using them to masturbate. The girls ranged in age from 6 years old to 17 years old. Smith did this for about a year, until June 2013. Smith was arrested after a little girl at the store caught his attention, and he "followed her over by the dressing room" and "tried taking a picture underneath the dressing room door." *Id.* at 556-57. Smith was charged with voyeurism and pleaded guilty.

Smith did not indicate in his testimony that the possibility of a future SVP petition would have a deterrent effect on his future behavior.

B. Testimony of Dr. Arnold

In addition, the State presented expert testimony from Dr. Dale Arnold, a forensic psychologist. Before Dr. Arnold began testifying as to his opinions regarding Smith's mental state and likelihood of reoffending, the trial court instructed the jury as follows:

> Dr. Arnold is about to testify regarding information he reviewed which is part of the basis for his opinion. You may consider this testimony only in deciding what credibility and weight should be given to the opinions of Dr. Arnold. You may not consider it as evidence that the information relied upon by the witness is true or that the events described actually occurred.

3 Verbatim Report of Proceedings (VRP) at 491-92.

Dr. Arnold then testified about his evaluation of Smith and the risk assessment tools he used to assess Smith's risk of reoffending. Dr. Arnold described details of Smith's 1990 offense as information that he considered in rendering his opinion. He explained that, in his opinion, Smith has a mental abnormality that makes him more likely to engage in predatory acts of sexual violence if not confined to a secure facility. Dr. Arnold explained that this mental abnormality was sexual attraction to children, and that Smith's "antisocial personality plays a role because I think that can

4

lead to emotional impairment, meaning that for some people harming others is uncomfortable to you; therefore, that discomfort you experience if you harm others keeps you from engaging in the behavior." *Id.* at 573-74.

During Dr. Arnold's testimony, there were several occasions when he mentioned the injuries sustained by the 1990 victim. First, when describing the actual event, Dr. Arnold stated, "because of his size and her size, being three years old, it caused tissue damage, and so there was a rip that went from her vagina to her rectum. . . . Ultimately she required surgery to correct some of the tissue damage that had been done." *Id.* at 516. Dr. Arnold later indicated that the reason Smith received an exceptional sentence for his 1990 offense "was the damage that was done to the child. It was exceptional in terms of the damage that was done." *Id.* at 520. Lastly, when discussing his evaluation relating to Smith's sexual interests, Dr. Arnold testified, "even though the 1990 crime was violent and it caused, you know, tissue tearing of the child and everything, there is no indication that the pain of the child caused him to be more sexually excited." *Id.* at 611.

### III. JURY INSTRUCTIONS

The trial court's "Instruction No. 4" listed the elements that the State needed to prove beyond a reasonable doubt, which included, "(1) That Randy Smith has been convicted of one crime of sexual violence, namely Rape of a Child in the First Degree." CP at 785. Smith did not object or propose alternate language. In addition, "Instruction No. 8" informed the jury that "'[s]exual violence' or 'harm of a sexually violent nature' means: Rape of a Child in the First Degree, . . . Any attempt to commit one of the crimes listed above also constitutes a 'sexually violent offense.'" *Id.* at 789.

5

Smith also did not object to the absence of an instruction including language about the possibility of a future petition based on an ROA, nor did he propose any such instruction. The jury was instructed, "[i]n determining whether [Smith] is likely to engage in predatory acts of sexual violence if not confined to a secure facility, you may consider all evidence that bears on the issue." *Id.* at 787. The jury was also instructed that,

> As jurors, you are officers of this court. You must not let your emotions overcome your rational thought process. You must reach your decision based on the facts proved to you and on the law given to you, not on sympathy, bias, or personal preference. To assure that all parties receive a fair trial, you must act impartially with an earnest desire to reach a proper verdict.

*Id.* at 782.

## IV. VERDICT AND APPEAL

The jury found that Smith was a sexually violent predator. The trial court entered an order of commitment under RCW 71.09.060. Smith appeals.

## DISCUSSION

### I. SEXUALLY VIOLENT PREDATOR STATUTE

"For a person to be committed as an SVP, RCW 71.09.060(1) requires the State to prove beyond a reasonable doubt that the person is a sexually violent predator within the meaning of the commitment statute." *In re Det. of Taylor-Rose*, 199 Wn. App. 866, 873, 401 P.3d 357 (2017). To do so, the State must prove three elements:

> (1) that the respondent "has been convicted of or charged with a crime of sexual violence," (2) that the respondent "suffers from a mental abnormality or personality disorder," and (3) that such abnormality or disorder "makes the person likely to engage in predatory acts of sexual violence if not confined in a secure facility."

No. 54505-5-II

*In re Det. of Post*, 170 Wn.2d 302, 309-10, 241 P.3d 1234 (2010) (quoting RCW 71.09.020(19)).[3]

## II. JUDICIAL COMMENT

In order to show that a person is an SVP, the State must first prove that the respondent "has been convicted of or charged with a crime of sexual violence." RCW 71.09.020(19). Smith argues that the trial court improperly commented on the evidence by instructing jurors to find that Smith's prior conviction of first degree child rape qualified as a "crime of sexual violence," and that this instruction relieved the State of its burden of proof.[4] Br. of Appellant at 7. We hold that Smith failed to preserve this challenge.

## A. LEGAL PRINCIPLES

Under article IV, section 16 of the Washington Constitution, a trial court is prohibited from " 'conveying to the jury his or her personal attitudes toward the merits of the case' or instructing a jury that 'matters of fact have been established as a matter of law.' " *State v. Levy*, 156 Wn.2d 709, 721, 132 P.3d 1076 (2006) (quoting *State v. Becker*, 132 Wn.2d 54, 64, 935 P.2d 1321 (1997)). Impermissible judicial comments on the evidence are presumed to be prejudicial. *Id.* at 725. If there has been a comment on the evidence, we are required to reverse unless the record affirmatively shows that no prejudice could have resulted or the State can show that the defendant was not prejudiced. *Id.* "But because it is the trial court's duty to declare the law, a jury instruction

___

[3] RCW 71.09.020 has been amended since the events of this case transpired and the briefing was filed. These amendments did not change the statutory language at issue in this case, but they did change the numbering of listed definitions. *See* LAWS OF 2021, ch. 236, § 2. This opinion cites to the current version of the statute.

[4] Smith frames this issue in terms of due process, arguing that the State was relieved of its burden to prove that the sexual crime he was convicted of was violent in fact. However, judicial comments are analyzed under article IV, section 16 of the Washington Constitution and need not be analyzed separately under the due process clause.

that does no more than accurately state the law pertaining to an issue is proper." *Taylor-Rose*, 199 Wn. App. at 874.

"It has long been the law in Washington that an 'appellate court may refuse to review any claim of error which was not raised in the trial court.' " *State v. O'Hara*, 167 Wn.2d 91, 97-98, 217 P.3d 756 (2009) (quoting RAP 2.5(a)). However, there is an exception when the error is a "manifest error affecting a constitutional right." RAP 2.5(a); *O'Hara*, 167 Wn.2d at 98. Error is manifest under RAP 2.5(a) if the appellant can show actual prejudice, demonstrated by a " 'plausible showing by the [appellant] that the asserted error had practical and identifiable consequences in the trial of the case.' " *O'Hara*, 167 W.2d at 99 (alteration in original) (internal quotation marks omitted) (quoting *State v. Kirkman*, 159 Wn.2d 918, 935, 155 P.3d 125 (2007)).[5]

B. ANALYSIS

Because Smith did not object below, he must demonstrate that the trial court's instructions indicating that first degree child rape is a "crime of sexual violence" was a manifest error affecting a constitutional right. *See In re Det. of Monroe*, 198 Wn. App. 196, 201, 392 P.3d 1088 (2017).

Smith fails to show that this was manifest error resulting in actual prejudice. In order to do so, Smith must show that this instruction " 'had practical and identifiable consequences in the trial of the case.' " *O'Hara*, 167 W.2d at 99 (quoting *Kirkman*, 159 Wn.2d at 935). Smith has not

---

[5] Although the supreme court in *Levy* indicated that a judicial comment on the evidence will always be considered even if raised for the first time on review, 156 Wn.2d at 719-20, subsequent cases have clarified that RAP 2.5(a)(3) requires the appellant to demonstrate that "(1) the error is manifest, and (2) the error is truly of a constitutional dimension." *O'Hara*, 167 Wn.2d at 98; see also *Kirkman*, 159 Wn.2d at 934 ("RAP 2.5(a)(3) does not permit *all* asserted constitutional claims to be raised for the first time on appeal, but only certain questions of 'manifest' constitutional magnitude.").

demonstrated that the outcome of the trial would have been different had the jury been instructed differently.

Here, the trial court instructed the jury that the State must prove beyond a reasonable doubt "[t]hat Randy Smith has been convicted of one crime of sexual violence, namely Rape of a Child in the First Degree." CP at 785. Smith appears to only challenge the above instruction. However, the trial court also instructed the jury that "'[s]exual violence' or 'harm of a sexually violent nature' means: Rape of a Child in the First Degree." *Id.* at 789. Both of these instructions are consistent with the pattern jury instructions.[6]

Smith argues that the language, " 'namely Rape of a Child in the First Degree,' " should have been removed from Instruction No. 4 so that the jury could determine whether the offense was violent " 'in fact.' " Br. of Appellant at 14-15.[7] But the jury heard Smith testify that his victim was three years old and that he raped her for 10 to 15 minutes while covering her mouth. The jury also heard that Smith committed this rape out of anger. Smith does not argue that a different instruction would have produced a different result or would have otherwise " 'had practical and identifiable consequences in the trial of the case.' " *O'Hara*, 167 W.2d at 99 (quoting *Kirkman*, 159 Wn.2d at 935). Therefore, Smith has failed to show that the trial court's instruction that his

---

[6] The pattern instruction on the elements for commitment reads: "That(respondent's name)has been convicted of a crime of sexual violence, namely(identify crime of sexual violence)." 6A WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CIVIL 365.10(1) (7th ed. 2019) (WPI). In addition, WPI 365.16 reads, " 'Sexual violence' [or] *['harm of a sexually violent nature']* means:(identify the applicable crimes)." (Brackets in original.)

[7] In making this argument, Smith relies on dictionary definitions for the word "violence." This type of argument was expressly rejected by the court in *In re Detention of Coppin*, 157 Wn. App. 537, 553, 238 P.3d 1192 (2010).

conviction for first degree rape of a child was a "crime of sexual violence" was a manifest error affecting a constitutional right.

Accordingly, Smith has waived this challenge.[8]

### III. INSTRUCTION ON POSSIBILITY OF FUTURE PETITION

Smith argues that the trial court erred in not instructing the jurors that he could be subject to a new SVP petition in the future for an ROA. We disagree.

In *Taylor-Rose*, we held that specific language to this effect in a jury instruction is not required for an SVP respondent to argue that the possibility of a future petition based on an ROA would serve as a deterrent and decrease the likelihood of reoffense. *Taylor-Rose*, 199 Wn. App. at 885-86. We adhere to our decision in *Taylor-Rose*; therefore, the trial court's instruction was not erroneous and we reject this contention.[9] [10]

---

[8] We additionally note that we agree with the prior decisions of this court in *Taylor-Rose* and *Coppin* that the terms "crime of sexual violence" and "sexually violent offense" are synonymous. *Taylor-Rose*, 199 Wn. App. at 876; *Coppin*, 157 Wn. App. at 553-54. Thus, Instruction No. 4 accurately stated the law and was not a comment on the evidence. *See Taylor-Rose*, 199 Wn. App. at 876.

[9] Even if *Taylor-Rose* was wrongly decided, Smith cannot show that any error in the jury instructions was manifest. For this to be manifest error, Smith must show that this omission in the jury instructions " 'had practical and identifiable consequences in the trial of the case.' " *O'Hara*, 167 W.2d at 99 (quoting *Kirkman*, 159 Wn.2d at 935). Smith has not argued, much less demonstrated, that the outcome of the trial would have been different had the jury been instructed about the possibility of a future petition based on an ROA. Therefore, Smith has failed to show that the trial court's omission of such an instruction is a manifest error affecting a constitutional right.

[10] Smith also argues that "procedural and substantive due process require application of the 'manifestly apparent' standard in civil commitment cases" when reviewing jury instructions. Br. of Appellant at 21. Even if we reviewed this issue on the merits, we have "previously rejected application of the 'manifestly apparent' standard to review the sufficiency of jury instructions in the civil commitment context." *Urlacher*, 6 Wn. App. 2d at 739.

IV. INCLUSION OF "SEXUALLY VIOLENT PREDATOR" IN JURY INSTRUCTIONS

Smith argues that the trial court erred in including the phrase "sexually violent predator" in the jury instructions. Br. of Appellant at 30. We disagree.

A. LEGAL PRINCIPLES

We review a trial court's refusal to provide a proposed jury instruction for an abuse of discretion. *In re Det. of Pouncy*, 168 Wn.2d 382, 390, 229 P.3d 678 (2010). "A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds." *In re Det. of Urlacher*, 6 Wn. App. 2d 725, 741, 427 P.3d 662 (2018). "A decision is based on untenable grounds when it relies on an incorrect interpretation of the law or applies the wrong legal standard." *Id.* A trial court's refusal of an instruction that does not accurately state the law is proper. *Id.*

B. ANALYSIS

Smith argues that the phrase "sexually violent predator" is itself unfairly prejudicial, and its inclusion in the instructions "inflamed the jury's passions and prejudices." Br. of Appellant at 31.

The SVP statute includes the phrase "sexually violent predator" throughout the statute. *See* ch. 71.09 RCW. A " '[s]exually violent predator' " is defined as "any person who has been convicted of or charged with a crime of sexual violence and who suffers from a mental abnormality or personality disorder which makes the person likely to engage in predatory acts of sexual violence if not confined in a secure facility." RCW 71.09.020(19). The purpose of the law is to distinguish "sexually violent predators" from those who may be deemed appropriate for civil commitment under chapter 71.05 RCW. RCW 71.09.010.

At trial, Smith requested that the trial court substitute the phrase "sexually violent predator" with the phrase "criteria for civil commitment." CP at 115. Smith provided the trial court with research showing that the phrase "sexually violent predator" affects juror decisions. The trial court denied this request on the basis that "[t]hat is the term that the law uses." RP at 44. This was not an abuse of the court's discretion. Including this term in the jury instructions is consistent with the pattern jury instructions[11] and accurately states the law. Therefore, it was proper for the court to deny Smith's request that did not accurately state the law under which the State sought to commit Smith. *See Urlacher*, 6 Wn. App. 2d at 741.

Smith argues that his due process rights were violated because the lack of neutral language in the jury instructions "encourages jurors to prefer commitment even if the person is not mentally ill and currently dangerous." Br. of Appellant at 34. However, the jury was not encouraged to prefer commitment. Rather, jurors were instructed to "not let [their] emotions overcome [their] rational thought process" and to reach their decision "based on the facts provided to [them] and on the law given to [them], not on sympathy, bias, or personal preference." CP at 782. In addition, the jurors were instructed to "act impartially" to "assure that all parties receive a fair trial." *Id.* The jury is presumed to follow the trial court's instructions. *See State v. Clark*, 187 Wn.2d 641, 654, 389 P.3d 462 (2017).

We hold that the trial court did not abuse its discretion in refusing to substitute the phrase "sexually violent predator" with "criteria for civil commitment" in the jury instructions.[12]

---

[11] *See, e.g.*, WPI 365.10 ("To establish that(respondent's name)is a sexually violent predator, the State must prove each of the following elements beyond a reasonable doubt.").

[12] To the extent that Smith intended this claim to cover any use of the phrase "sexually violent predator" throughout the trial, rather than just in the jury instructions, our decision is the same.

V. EVIDENCE OF INJURIES SUSTAINED BY VICTIM IN PREDICATE OFFENSE

Smith argues that evidence of the injuries sustained by the victim in his 1990 offense should have been excluded. We disagree.

A. STANDARD OF REVIEW

We "will not disturb a trial court's rulings on a motion in limine or the admissibility of evidence absent an abuse of the court's discretion." *State v. Powell*, 126 Wn.2d 244, 258, 893 P.2d 615 (1995).

B. ANALYSIS

*1. Relevance*

Smith suggests that the evidence of the victim's injuries was not relevant because (1) the evidence was not necessary for the State to establish the predicate offense and (2) the State's expert, Dr. Arnold, "did not tie the graphic evidence to any opinion he gave." Br. of Appellant at 36.

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." ER 401. The State had to prove that Smith "suffers from a mental abnormality or personality disorder." RCW 71.09.020(19).

Dr. Arnold relied on facts of the 1990 offense generally in rendering his opinion, but he also relied on the evidence of the victim's injuries specifically. In response to Smith's motion in limine, the State provided Dr. Arnold's deposition testimony relating the injuries to Smith's emotional and volitional impairments and callousness, and the trial court denied Smith's motion "for the reasons articulated by the State." RP at 38. Dr. Arnold similarly testified at trial that

Smith's "antisocial personality plays a role because I think that can lead to emotional impairment, meaning that for some people harming others is uncomfortable to you; therefore, that discomfort that you experience if you harm others keeps you from engaging in the behavior." 3 VRP at 573-74. Dr. Arnold also testified that the victim's injuries were relevant to Smith's sexual interests. *Id.* at 611 ("even though the 1990 crime was violent and it caused, you know, tissue tearing of the child and everything, there is no indication that the pain of the child caused him to be more sexually excited.").

Because Dr. Arnold relied on the evidence in rendering his opinion, the evidence was relevant.[13]

### 2. Probative Value vs. Unfair Prejudice

Nevertheless, Smith argues that evidence of the victim's injuries should have been excluded because it was highly prejudicial "and had (at most) minimal probative value." Br. of Appellant at 34. We disagree with Smith that the probative value of this evidence was outweighed by the potential for prejudice.

Under ER 403, a trial court may exclude relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice."[14] In rendering an opinion, an expert witness may rely upon facts that need not be otherwise admissible in evidence if the facts are

---

[13] It is worth noting that if Smith were correct that the State must prove that his crime of first degree rape of a child was a crime of sexual violence "in fact," as opposed to merely a sexually violent offense as classified by the statute (issue I), then the victim's injuries would most certainly be relevant and admissible on that issue.

[14] Smith argues that the trial court was required to balance these factors on the record, which the trial court did not do. However, the requirement that this balance be on the record appears to only apply to ER 404(b) evidence. *See, e.g., Powell*, 126 Wn.2d at 264. This evidence does not fall under ER 404(b) because it was offered as a basis for an expert opinion under ER 703.

reasonably relied upon by experts in the field. ER 703. "An expert can testify regarding the basis for his opinion for the limited purpose of showing how he reached his conclusion only if the probative value of the basis for the opinion is not substantially outweighed by its prejudicial nature." *State v. Acosta*, 123 Wn. App. 424, 436, 98 P.3d 503 (2004).

Because the trial court admitted the testimony for the limited purpose of showing how Dr. Arnold reached his opinions, "[t]he primary question is whether [he] *reasonably* relied" on evidence of the victim's injuries in rendering his opinions under ER 703. *Id.* In *Acosta*, the State's expert testified about the defendant's criminal history in rebutting the claim that the defendant had diminished capacity. *Id.* at 429. This court held that it was unreasonable for the expert to rely on the defendant's criminal record "because he did not know the facts surrounding the arrests and convictions" and "his testimony failed to tie his findings regarding diminished capacity to Acosta's criminal history or mental state." *Id.* at 436-37. In addition, the expert "had sufficient facts on which to base his opinion without relying on the [criminal history]." *Id.* at 437.

Here, Dr. Arnold knew the facts surrounding Smith's 1990 offense, and he tied his opinions regarding Smith's mental state to the evidence of the victim's injuries during the trial. Even though Dr. Arnold had sufficient other facts without relying on the evidence of the injuries, it was reasonable for him to rely on this evidence in his comprehensive analysis of both Smith's mental state and likelihood of reoffending because the evidence was directly relevant to his opinions.

The court in *Acosta* explained that, even if the expert reasonably relied on the evidence, it is still subject to ER 403 balancing. *Id.* Here, other factual details surrounding Smith's underlying offense permeated the SVP trial, including Smith's own testimony that he held down a three-year-old, covered her mouth, and forcibly raped her with his penis. In light of the other evidence the

jury heard from Smith himself, Dr. Arnold's testimony did not unfairly prejudice Smith, and the trial court did not abuse its discretion in allowing Dr. Arnold to testify about the victim's injuries.

*3. Harmless Error*

Even if it was error for the trial court to admit this testimony, any error was harmless.

" 'An evidentiary error which is not of constitutional magnitude, . . . requires reversal only if the error, within reasonable probability, materially affected the outcome.' " *Id.* at 438 (quoting *State v. Stenson*, 132 Wn.2d 668, 709, 940 P.2d 1239 (1997)). Therefore, we must "assess whether the error was harmless by measuring the admissible evidence [ ] against the prejudice caused by the inadmissible testimony." *Id.*

Here, the jury was given a limiting instruction to consider the bases for Dr. Arnold's opinions "only in deciding what credibility and weight should be given to the opinions of Dr. Arnold." 3 VRP at 491. Dr. Arnold referred to the victim's injuries only a few times during the trial. Although Smith did not discuss the victim's injuries, he discussed the actual events of the 1990 offense in graphic detail.

The jury heard from Smith himself that he, a grown man, removed a 3-year-old child from her bed and, while angry, held her down, placed his hand over her mouth, and forcibly raped her for 10 to 15 minutes. This was a horrific act. A person of common understanding would conclude that this act caused the victim extreme pain and terror, and it is in no way surprising that injury ensued. In light of the admission of this evidence, it strains credulity to conclude that undue prejudice ensued because the jury heard that the victim suffered an injury to her vaginal region as a result of the rape.

No. 54505-5-II

Therefore, even if the trial court erred in allowing Dr. Arnold to testify about the victim's injuries in the 1990 case, this error was harmless, and the trial court did not abuse its discretion in admitting the evidence.

CONCLUSION

We hold that Smith failed to preserve his argument that the trial court's instruction that his prior offense was a "crime of sexual violence" was a comment on the evidence. In addition, we hold that Smith failed to preserve his argument that the trial court should have instructed the jury that Smith could be subject to a new SVP petition for an ROA. We also hold that the trial court did not err by refusing to substitute the phrase "sexually violent predator" in the jury instructions. Finally, we hold that, it was not error for the trial court to admit the expert testimony regarding the injuries suffered by the victim from Smith's prior offense, but even if it was error, any resulting error was harmless. Accordingly, we affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

CRUSER, J.

We concur:

MAXA, J.

LEE, C.J.

17