# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In re Detention of:<br><br>BRIAN TAYLOR-ROSE. | No. 47975-3-II<br><br>PUBLISHED OPINION |

MAXA, A.C.J. – Brian Taylor-Rose appeals his civil commitment as a sexually violent predator (SVP) under RCW 71.09.060 following a jury trial.

We hold that (1) the trial court did not err in instructing the jury that second degree child molestation is a crime of sexual violence, (2) the State provided sufficient evidence that Taylor-Rose was likely to engage in predatory acts of sexual violence if not confined to a secure facility, (3) the trial court did not err in instructing the jury to determine Taylor-Rose's risk level if released "unconditionally" from detention on the SVP petition, (4) the trial court did not err in declining to expressly include "placement conditions" as evidence the jury could consider in determining whether Taylor-Rose was likely to engage in predatory acts of sexual violence if not confined to a secure facility, and (5) the trial court did not err by declining to give Taylor-Rose's proposed instruction about the State's ability to bring a new SVP petition based on a recent overt act following his release.

Accordingly, we affirm Taylor-Rose's commitment as an SVP.

FACTS

Taylor-Rose has two criminal convictions for sex offenses. In 1998, he pleaded guilty to second degree child molestation. In 2009, he pleaded guilty to third degree child molestation. In December 2012, before the end of Taylor-Rose's sentence, the State filed an SVP petition against him. The State used Taylor-Rose's 1998 conviction as the predicate sexually violent offense for the petition.

*Trial Testimony*

At trial, the State presented several witnesses to testify about the conduct leading to Taylor-Rose's two convictions. Lourene O'Brien-Hooper, a community corrections officer who supervised Taylor-Rose on and off for more than 10 years after he was released following his 1998 conviction, testified about his violations, arrests and high risk behavior while on supervision. She also stated her concerns about Taylor-Rose's deviant fantasies and arousal to children and his violating the condition to not have contact with children.

Dr. Harry Hoberman, a forensic psychologist, testified that in his expert opinion it was more likely than not that Taylor-Rose would commit an act of sexual violence if not confined to a secure facility. Hoberman explained how he arrived at that conclusion using various assessments. His analysis included determining Taylor-Rose's lifetime risk of sexual reoffending. Hoberman also noted that the fact that Taylor-Rose would be under community supervision if released did not impact his opinion about Taylor-Rose's risk of reoffending.

Taylor-Rose also testified. He stated that he no longer had deviant thoughts about children. He also stated that he would not have an issue being around children if released.

However, he acknowledged that during earlier treatment sessions he had stated that, if released, he probably would create more victims.

*Jury Instructions*

The trial court instructed the jury on the three elements required to find Taylor-Rose met the definition of SVP. The first element was that he had been convicted of a crime of sexual violence. Two of the court's instructions informed the jury that second degree child molestation was a crime of sexual violence.

The second element, which is not in dispute here, was that Taylor-Rose suffered from a "mental abnormality or personality disorder which causes serious difficulty in controlling his sexually violent behavior." Clerk's Papers (CP) at 18.

The third element was that Taylor-Rose was likely to engage in predatory acts of sexual violence if not confined to a secure facility. The trial court gave instruction 15, which explained that " '[l]ikely to engage in predatory acts of sexual violence if not confined in a secure facility' means that the person more probably than not will engage in such acts if released unconditionally from detention in this proceeding." CP at 27. The instruction stated that the jury could consider certain voluntary treatment options in making this determination. Taylor-Rose argued against this instruction, and proposed an instruction similar to instruction 15 that removed any reference to unconditional release and allowed the jury to consider his placement conditions if released. The court declined to give Taylor-Rose's proposed instruction.

*Verdict and Appeal*

The jury returned a verdict finding that the State had proved beyond a reasonable doubt that Taylor-Rose met the definition of an SVP. Pursuant to that verdict, the trial court issued an

3

order of commitment confining Taylor-Rose to a special commitment center until such a time

when his mental abnormality and/or personality disorder had changed so that he could be

conditionally released or unconditionally discharged.

Taylor-Rose appeals his commitment as an SVP.

ANALYSIS

A.      LEGAL PRINCIPLES

For a person to be committed as an SVP, RCW 71.09.060(1) requires the State to prove

beyond a reasonable doubt that the person is a sexually violent predator within the meaning of

the commitment statute. *In re Det. of Post,* 170 Wn.2d 302, 309-10, 241 P.3d 1234 (2010).

RCW 71.09.020 (18)[1] defines a "[s]exually violent predator" as:

> any person who has been convicted of or charged with a crime of sexual violence
> and who suffers from a mental abnormality or personality disorder which makes
> the person likely to engage in predatory acts of sexual violence if not confined in a
> secure facility.

This definition contains three elements:

> (1) that the respondent "has been convicted of or charged with a crime of sexual
> violence," (2) that the respondent "suffers from a mental abnormality or personality
> disorder," and (3) that such abnormality or disorder "makes the person likely to
> engage in predatory acts of sexual violence if not confined in a secure facility."

*Post,* 170 Wn.2d at 309-10 (quoting RCW 71.09.020(18)).

Regarding the third element, a person is "likely to engage in predatory acts of sexual

violence" within the meaning of RCW 71.09.020(18) if "the person more probably than not will

---

[1] RCW 71.09.020 has been amended since the events of this case transpired. However, these amendments do not impact the statutory language relied on by this court. Accordingly, we do not include the word "former" before RCW 71.09.020.

engage in such acts if released unconditionally from detention on the sexually violent predator petition." RCW 71.09.020(7).

B.      INSTRUCTIONS ON "CRIME OF SEXUAL VIOLENCE"

The first element the State must prove to show a person is an SVP is that the respondent "has been convicted of or charged with a *crime of sexual violence*." RCW 71.09.020(18) (emphasis added). Taylor-Rose argues that the trial court improperly commented on the evidence and relieved the State of its burden of proof when it gave two instructions stating that second degree child molestation was a "crime of sexual violence." We disagree.

1.    Legal Principles

Article IV, section 16 of the Washington Constitution states, "Judges shall not charge juries with respect to matters of fact, nor comment thereon, but shall declare the law." A trial court makes an improper comment on the evidence if it gives an instruction that (1) conveys to the jury his or her personal attitude on the merits of the case or (2) instructs the jury that matters of fact have been established as a matter of law. *State v. Levy*, 156 Wn.2d 709, 721, 132 P.3d 1076 (2006). But because it is the trial court's duty to declare the law, a jury instruction that does no more than accurately state the law pertaining to an issue is proper. *State v. Brush*, 183 Wn.2d 550, 557, 353 P.3d 213 (2015). We review the instructions de novo to determine if the trial court has improperly commented on the evidence. *Levy*, 156 Wn.2d at 721.

Here, the trial court's instructions stating that second degree child molestation was a crime of sexual violence reflected a legal conclusion on that issue. If that legal conclusion was correct, the court's instructions accurately stated the law and did not constitute a comment on the evidence.

2.    Analysis

The SVP statute does not define the term "crime of sexual violence."  However, RCW 71.09.020(17) provides a list of offenses that qualify as a "sexually violent offense" and that list includes second degree child molestation.

Taylor-Rose argues that "crime of sexual violence" cannot mean the same thing as "sexually violent offense" based on the principle that when the legislature uses different language in the same statute, different meanings are intended.  *State v. Costich*, 152 Wn.2d 463, 475-76, 98 P.3d 795 (2004).

Division One of this court addressed this issue in *In re Detention of Coppin*, 157 Wn. App. 537, 238 P.3d 1192 (2010).  In *Coppin*, the court stated that under general principles of statutory interpretation, the meaning of "crime of sexual violence" in RCW 71.09.020(18) must be considered in conjunction with other provisions in the same statute.  *Id.* at 553; *see State v. Evans*, 177 Wn.2d 186, 192, 298 P.3d 724 (2013).  The court also stated that the interpretation of a statutory provision must avoid unlikely, absurd or strained results.  *Coppin*, 157 Wn. App. at 553; *see State v. Shirts*, 195 Wn. App 849, 858, 381 P.3d 1223 (2016).

Applying these principles, the court looked to the definition of "sexually violent offense" in RCW 71.09.020(17) to determine the meaning of "crime of sexual violence."  *Coppin*, 157 Wn. App. at 553.  The court stated, "The legislature expressly defined 'sexually violent offense' to include statutory rape in the first degree.  Given this definition, it would be absurd to conclude that first degree statutory rape, a 'sexually violent offense,' is not also a 'crime of sexual violence.' "  *Id.*

The court in *Coppin* expressly rejected the argument Taylor-Rose makes here: that because the legislature used different terms in subsections (17) and (18), it must have intended different meanings. *Id.* The court stated that "there is no material difference between the term 'violent' used in subsection 17 and the term 'violence' used in subsection 18." *Id.*

Taylor-Rose urges this court to reject Division One's holding in *Coppin*. But we agree with the analysis in *Coppin*. A crime that is expressly listed in the definition of "sexually violent offense" in RCW 71.09.020(17) necessarily also qualifies as a "crime of sexual violence."

Here, the trial court's instructions correctly declared the law that second degree child molestation is a crime of sexual violence under RCW 71.09.020(18) and therefore those instructions did not relieve the State of its burden of proof. Accordingly, we hold that the trial court did not err in instructing the jury that second degree child molestation was a crime of sexual violence.

C.      SUFFICIENCY OF THE EVIDENCE – LIKELIHOOD OF REOFFENDING

The third element the State must prove to show a person is an SVP is that the respondent's mental abnormality or disorder "makes the person likely to engage in predatory acts of sexual violence if not confined in a secure facility." RCW 71.09.020(18). Taylor-Rose argues that the State presented insufficient evidence to establish this element because the State's expert relied on Taylor-Rose's lifetime risk of committing such acts. He asserts that his lifetime risk could not support a finding that he was "currently dangerous," as required by due process. We disagree.

### 1. Standard of Review

We treat sufficiency challenges to SVP civil commitment determinations like sufficiency challenges to criminal convictions. *In re Det. of Thorell,* 149 Wn.2d 724, 744, 72 P.3d 708 (2003). We view the evidence in the light most favorable to the State and ask whether the evidence was "sufficient to persuade a fair-minded, rational person that the State has proved beyond a reasonable doubt that [the respondent] is a sexually violent predator." *State v. Hoisington,* 123 Wn. App. 138, 147, 94 P.3d 318 (2004). We defer to the trier of fact on determinations of witness credibility and evidentiary weight. *In re Det. of Sease,* 149 Wn. App. 66, 80, 201 P.3d 1078 (2009).

### 2. Legal Principles

In order for the civil commitment process to comply with due process requirements, the State must prove that the alleged SVP is both mentally ill and currently dangerous. *In re Det. of Moore*, 167 Wn.2d 113, 124, 216 P.3d 1015 (2009) (citing *Foucha v. Louisiana*, 504 U.S. 71, 112 S. Ct. 1780, 118 L. Ed. 2d 437 (1992)). However, our Supreme Court in *Moore* held that "by properly finding all the statutory elements are satisfied to commit someone as an SVP, the fact finder impliedly finds that the SVP is currently dangerous." 167 Wn.2d at 124.

In *Moore*, the court stated that "[l]ikely to engage in predatory acts of sexual violence" as defined in RCW 71.09.020(7) contains a temporal component. *Id.* For example, the court noted that "if an expert predicts that an alleged SVP will reoffend only in the far distant future, then there is less likelihood that the 'more probable than not' standard has been legally satisfied." *Id.* But the court stated that whether that standard is satisfied depends on the specific facts of the case and the expert testimony, including the statistical likelihood of reoffending. *Id.* at 124-25.

The court in *Moore* held that if a jury properly finds a person to be an SVP – that the person will more probably than not engage in predatory acts of sexual violence if not confined to a secure facility – "it is implied that the person is currently dangerous." *Id.* at 125. The court concluded that "[w]e do not deem it necessary to impose on the State the additional burden that it prove the SVP will reoffend in the foreseeable future." *Id.*

3. Sufficiency Analysis

Hoberman testified that he performed a risk assessment based on multiple risk assessment approaches and measures in order to form an opinion about whether Taylor-Rose was likely to engage in predatory acts of sexual violence over his remaining lifetime if not confined to a secure facility. He stated that to reach his conclusion he used various actuarial instruments, his structured professional judgment, and an analysis of dynamic risk factors, which involved identifying predispositions or enduring characteristics that may convey risk for sexual offending in the future. He also considered other factors that might bear on overall risk. Hoberman concluded that in his expert opinion Taylor-Rose would more likely than not commit a predatory act of sexual violence if not confined in a secure facility.

Taylor-Rose argues that Hoberman's testimony improperly relied on Taylor-Rose's lifetime risk for reoffending, and that some other formulation must be used to express a person's overall risk. Taylor-Rose relies on the United States Supreme Court's decision in *Foucha*, which stated that due process requires that civil commitment be based on a finding that a person is both mentally ill and currently dangerous. 504 U.S. at 77, 80. He argues that lifetime risk cannot show the required *current* dangerousness.

However, Taylor-Rose does not provide any legal authority supporting his interpretation of "currently dangerous" as excluding lifetime risk. And our Supreme Court clearly stated in *Moore* that current dangerousness is not a separate factor, but is inherent in the existing definition of an SVP. 167 Wn.2d at 125. The court expressly rejected the idea that the State's burden should include showing a likelihood of reoffending within the foreseeable future. *Id.* Therefore, we reject Taylor-Rose's assertion that consideration of lifetime risk is improper or represents insufficient evidence.

Further, Hoberman's testimony was not the only evidence the State presented. The testimony regarding Taylor-Rose's prior offenses, his conduct while on community supervision, and his own statements during treatment about creating new victims if released support the jury's finding that Taylor-Rose was likely to engage in predatory acts of sexual violence if not confined to a secure facility.

Accordingly, viewing Hoberman's testimony and other supporting evidence in the light most favorable to the State, there was sufficient evidence to support the jury's finding that Taylor-Rose more probably than not would commit predatory acts of sexual violence if not confined in a secure facility.

D.     INSTRUCTION ON LIKELIHOOD OF REOFFENDING

The trial court's instruction 15 addressed the third element the State must prove to show a person is an SVP: the likelihood that the respondent will "engage in predatory acts of sexual violence if not confined in a secure facility." RCW 71.09.020(18). Taylor-Rose argues that the trial court erred in giving instruction 15 because that instruction (1) required the jury to determine Taylor-Rose's risk level if released "unconditionally" from detention in the SVP

10

proceeding, (2) did not include a reference to "placement conditions," and (3) did not include language instructing the jury about the State's ability to bring a new SVP petition in the future if he was not confined. We disagree.

1. Standard of Review

"Jury instructions are generally sufficient if they are supported by the evidence, allow each party to argue its theory of the case, and when read as a whole, properly inform the trier of fact of the applicable law." *Fergen v. Sestero*, 182 Wn.2d 794, 803, 346 P.3d 708 (2015); *see also In re Det. of Monroe*, 198 Wn. App. 196, 202, 392 P.3d 1088 (2017) (applying general rule to SVP case). When we review a jury instruction, we consider all the trial court's instructions as a whole to ensure that both parties are allowed to fairly state their case.[2] *Rekhter v. Dep't of Soc. & Health Servs.*, 180 Wn.2d 102, 120, 323 P.3d 1036 (2014).

We review alleged errors in law in a trial court's jury instructions de novo. *Fergen*, 182 Wn.2d at 803. However, absent a legal error we review a trial court's decision regarding the specific language of the instruction for an abuse of discretion. *Terrell v. Hamilton*, 190 Wn. App. 489, 498, 358 P.3d 453 (2015). A trial court has broad discretion in determining the wording of jury instructions. *State v. Walters*, 162 Wn. App. 74, 82, 255 P.3d 835 (2011). We also review a trial court's decision not to give a proposed instruction for abuse of discretion.

---

[2] Taylor-Rose argues that we must review the jury instructions to determine whether the relevant legal standard was "manifestly apparent" to the average juror, citing *State v. Kyllo*, 166 Wn.2d 856, 864, 215 P.3d 177 (2009). But the court in that case was tasked with determining whether one incorrect instruction and one correct instruction read together made the correct standard apparent to the jury. *Id.* at 864-65. Taylor-Rose does not argue that there were contradictory instructions given in this case as in *Kyllo*. Accordingly, we reject Taylor-Rose's request to apply the standard from *Kyllo*.

*Rekhter*, 180 Wn.2d at 120. A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds. *Terrell*, 190 Wn. App. at 499.

Because Taylor-Rose's arguments regarding instruction 15 involve word choice and the trial court's decision to not include his proposed additional language, we apply an abuse of discretion standard.

2. Reference to "Unconditional" Release

Instruction 15 stated:

> "Likely to engage in predatory acts of sexual violence if not confined in a secure facility" means that the person more probably than not will engage in such acts if *released unconditionally* from detention in this proceeding.
> . . . .
> In determining whether the respondent is likely to engage in predatory acts of sexual violence if not confined to a secure facility, you may consider all evidence that bears on the issue. In considering voluntary treatment options, however, you may consider only voluntary treatment options that would exist if the respondent is *unconditionally released* from detention in this proceeding.

CP at 27 (emphasis added). Taylor-Rose's proposed instruction removed the word "unconditionally" from this instruction. He argues that using that term was inappropriate because his release from detention would not have been unconditional if the jury found that he was not an SVP. Taylor-Rose emphasizes that he would have been subject to 36 to 48 months of community supervision under the sentence for his 2009 conviction.

But instruction 15 contained language that was almost identical to the applicable statutes. RCW 71.09.020(7) states:

> "Likely to engage in predatory acts of sexual violence if not confined in a secure facility" means that the person more probably than not will engage in such acts *if released unconditionally from detention* on the sexually violent predator petition.

(Emphasis added.) RCW 71.09.060(1) states:

> In determining whether or not the person would be likely to engage in predatory acts of sexual violence if not confined in a secure facility, the fact finder may consider only placement conditions and voluntary treatment options that would exist for the person *if unconditionally released from detention* on the sexually violent predator petition.

(Emphasis added.) The word "unconditionally" also is included in the applicable pattern jury instruction on which instruction 15 was based: WPI 365.14. 6A WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CIVIL 365.14, at 577 (6th ed. 2012) (WPI).

Further, instruction 15 allowed Taylor-Rose to argue that the conditions of his release from confinement on his criminal conviction made him less likely to reoffend. The instruction states that the jury could consider "all evidence that bears on the issue."[3] CP at 27. In fact, the challenged portions of instruction 15 do not even address the conditions of Taylor-Rose's release from confinement on his criminal conviction. They refer to release "in this proceeding," CP at 27; i.e., on the SVP petition. Taylor-Rose argues that a jury would not understand this nuance. But an instruction is not erroneous simply because counsel may need to explain certain language to the jury, particularly when the legislature has chosen that language. *See State v. Harris*, 164 Wn. App. 377, 387, 263 P.3d 1276 (2011) (stating that "a trial court should use the statute's language" when instructing the jury).

Removing the word "unconditionally" from instruction 15 as Taylor-Rose proposed would have been contrary to the statutory language. And when read as a whole, the instruction would not lead the jury to believe that it could not consider Taylor-Rose's community

---

[3] This portion of instruction 15 did not come from any part of the SVP statute. RCW 71.09.060(1) is unartfully written, and it could be argued based on that statute that the *only* evidence regarding the likelihood of reoffending that a jury could consider was the respondent's placement conditions and voluntary treatment options. But because Taylor-Rose does not challenge this language, we do not consider this issue.

supervision for his criminal conviction.  Therefore, we hold that the trial court did not err in

referencing unconditional release in instruction 15.

        3.    Failing to Include "Placement Conditions"

        Taylor-Rose's proposed instruction added language to the final paragraph of instruction

15.  He proposed that the instruction should include "placement conditions" in addition to

"voluntary treatment options" as something the jury could consider in determining whether he

would likely engage in predatory acts of sexual violence if not confined in a secure facility.  He

emphasizes that both RCW 71.09.060(1) and WPI 365.14 support including that language.

        RCW 71.09.060(1) refers to placement conditions.  That statute states:

> In determining whether or not the person would be likely to engage in predatory acts of sexual violence if not confined in a secure facility, the fact finder may consider only *placement conditions* and voluntary treatment options that would exist for the person if unconditionally released from detention on the sexually violent predator petition.

(Emphasis added.)

        WPI 365.14 includes "placement conditions" as language that can be included in the

instruction:

> [In determining whether the respondent is likely to engage in predatory acts of sexual violence if not confined to a secure facility, you may consider all evidence that bears on the issue.  In considering [*placement conditions or*] voluntary treatment options, however, you may consider only [*placement conditions or*] voluntary treatment options that would exist if the respondent is unconditionally released from detention in this proceeding.]

(Emphasis added.)  The note on use accompanying the pattern instruction states that the

bracketed paragraph "should be used when evidence of . . . 'placement conditions' has been

introduced into evidence.  Use the bracketed phrase 'placement conditions' only if the evidence

indicates that the respondent will be subject to court-ordered supervision, even if released on the predator petition." WPI 365.14 note on use at 577.

The comment to WPI 365.14 states that the instruction allows "consideration of court-ordered conditions that would exist if the SVP petition were dismissed. . . . 'Conditions that would exist' are typically pre-existing community supervision conditions placed on respondent in connection with a prior criminal conviction." WPI 365.14 comment at 578-79.

Based on the statute and pattern jury instruction, it would have been appropriate for the trial court to include "placement conditions" in the instruction because evidence was admitted at trial regarding Taylor-Rose's community supervision. However, the fact that it would be proper to include certain language in a jury instruction does not mean that the trial court was required to include that language. *See Terrell*, 190 Wn. App. at 506. The issue here is whether the trial court abused its discretion in not including the "placement conditions" language.

As noted above, instruction 15 stated that the jury may consider "all evidence that bears on the issue" of whether Taylor-Rose was likely to engage in predatory acts of sexual violence if released. CP at 27. This instruction did not prevent or prohibit the jury from considering Taylor-Rose's community supervision. Although it would have been more helpful to Taylor-Rose if the instruction explicitly drew the jury's attention to placement conditions, the instruction allowed the jury to consider "all evidence." The trial court admitted the terms of his community supervision into evidence. Taylor-Rose's community supervision was also discussed by Hoberman when he testified about the risk assessment he performed on Taylor-Rose. Therefore, instruction 15 as given did not prevent Taylor-Rose from arguing his theory that he could be

safely released from the SVP petition because his community supervision would prevent him from engaging in predatory acts of sexual violence.

When read as a whole, instruction 15 would not lead the jury to believe that it could not consider placement conditions such as Taylor-Rose's community supervision and allowed Taylor-Rose to argue those placement decisions. Accordingly, we hold that even though including a reference to "placement conditions" in instruction 15 would have been appropriate, the trial court did not abuse its discretion in declining to include that language.[4]

4. State's Ability to Bring a New SVP Petition

Taylor-Rose's proposed version of instruction 15 included language stating that the State could bring a new SVP petition if Taylor-Rose committed a recent overt act following his release. Under RCW 71.09.030(1)(e), the State can file an SVP petition if a person who has previously been convicted of a sexually violent offense and later is released from confinement commits a recent overt act. Taylor-Rose argues that the trial court erred by refusing to include that language because without it, he was unable to argue that he was less likely to reoffend because certain acts could subject him to future confinement. We disagree.

Taylor-Rose relies on *Post*, 170 Wn.2d at 316-17. In *Post*, the court held that "[e]vidence that a respondent in an SVP proceeding who is subsequently released could be subject to another SVP proceeding if he commits a recent overt act is relevant and is a condition that would exist upon placement in the community." *Id.* at 316. The court noted that this evidence is relevant

---

[4] Although we hold that the trial court did not err in giving instruction 15, we believe that the language of WPI 365.14 – on which instruction 15 was based – could be clearer. The second sentence of the final paragraph does not follow from the first sentence. Adding the following second sentence would be helpful: "This evidence includes the respondent's [placement conditions and] voluntary treatment options."

because the threat of a new SVP petition would have "some tendency to diminish the likelihood of [respondent] committing another predatory act of sexual violence." *Id.* at 317.

However, *Post* did not require that a trial court give a proposed jury instruction regarding the possibility of a new SVP petition and in fact did not address jury instructions at all. Therefore, the issue here is whether Taylor-Rose's proposed language was necessary for him to argue his theory that the threat that the State could file a new SVP petition would make him less likely to reoffend. *See Monroe*, 198 Wn. App. at 202.

Here, as noted above, instruction 15 stated that the jury could consider all evidence that bears on the issue of whether Taylor-Rose was likely to engage in predatory acts of sexual violence if not confined to a secure facility. The threat that the State would file a new SVP petition based on certain conduct was evidence relating to that issue, and therefore this instruction allowed Taylor-Rose to argue his theory without the need for more specific language.

Further, in this case there was no evidence presented at trial that Taylor-Rose would be less likely to reoffend because of the potential for new SVP petitions. Therefore, Taylor-Rose's proposed language was not supported by the evidence. A trial court does not abuse its discretion when it refuses to give an instruction that is not supported by the evidence. *See State v. Green*, 182 Wn. App. 133, 152, 328 P.3d 988 (2014).

Accordingly, we hold that the trial court did not abuse its discretion by refusing to include in instruction 15 Taylor-Rose's proposed language regarding the State's ability to file a new SVP petition.

No. 47975-3-II

E.      APPELLATE COSTS

Taylor-Rose requests that we not impose appellate costs if the State prevails because he is indigent. We decline to consider this issue. A commissioner of this court will consider whether to award appellate costs in due course under RAP 14.2 if the State decides to file a cost bill and if Taylor-Rose objects to that cost bill.

CONCLUSION

We affirm Taylor-Rose's commitment as an SVP.

_____
MAXA, A.C.J.

We concur:

_____
LEE, J.

_____
SUTTON, J.

18