# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In the Matter of the Detention of | No. 50573-8-II |
| MICHAEL CANTY, | |
| Respondent. | UNPUBLISHED OPINION |

JOHANSON, J. — Michael James Canty appeals from a sexually violent predator (SVP) civil commitment order following a jury verdict. Canty argues that (1) the trial court committed constitutional error by admitting a witness's prior testimony, (2) the trial court erred by refusing to instruct the jury on the possibility of a recent overt act (ROA) petition and by declining to use the term "criteria for civil commitment" instead of "sexually violent predator" in the jury instructions, (3) there was insufficient evidence that he was likely to engage in predatory acts of sexual violence if released, and (4) one jury instruction was an improper judicial comment on the evidence. Canty's arguments fail. Accordingly, we affirm.

## FACTS

On August 2, 2016, the State filed a petition alleging that Canty was an SVP. The petition alleged that Canty had prior convictions for sexually violent offenses,[1] that he had a personality disorder causing him serious difficulty in controlling his behavior, and that it was likely Canty would commit future predatory acts of sexual violence as a result.

### I. MOTIONS IN LIMINE

#### A. WITNESS'S UNAVAILABILITY AND PRIOR TESTIMONY

The State moved in limine to admit the prior sworn testimony of ZB[2] from a preliminary hearing in a California case leading to Canty's prior convictions in 1997 for sexual battery, attempted kidnapping, and false imprisonment. The State argued that ZB was unavailable under ER 804 to testify at the SVP proceedings. The State's investigator, Dwain Sparrowk, declared that he tried to locate ZB for trial by (1) sending correspondence to her last known address, (2) sending correspondence to a potential relative of ZB named as a witness in the police report for the 1996 attack, (3) using social media, and (4) using law enforcement databases. Sparrowk declared that he "exhausted all available resources," but was nevertheless unable to locate ZB. Clerk's Papers (CP) at 92. The State also argued that there is no right to cross-examine a witness in a civil SVP proceeding.

---

[1] The State also moved to add the 1997 California conviction for sexual battery to the SVP petition as a prior sexually violent offense. Canty objected to the proposed amendment. The trial court found the prior conviction for sexual battery in California comparable to the Washington offense of indecent liberties with forcible compulsion, but denied the motion as untimely.

[2] We refer to ZB by her initials because she is a sexual assault victim.

Canty objected to the admission of ZB's testimony, arguing that the State had not shown her unavailability. Canty also argued that the purpose of the 1996 preliminary hearing differed from the purpose of a civil commitment trial. He emphasized that he had no opportunity to cross-examine ZB on issues relating to the current civil commitment trial—specifically he did not cross-examine ZB on Canty's mental state while committing the 1996 offenses against her. However, Canty acknowledged "there might not be a right to confront the witness." 1 Report of Proceedings (RP) at 98-99. Canty also noted that the jury acquitted Canty of assault with the intent to rape ZB and convicted him of the lesser crime of sexual battery.

The trial court found that the State's effort to locate ZB was sufficient to establish her unavailability under ER 804. To determine admissibility of ZB's prior testimony under ER 804(b)(1), the trial court considered the types of proceedings involved, the nature of the testimony, and the fact that ZB gave the prior testimony under oath and subject to cross-examination. The trial court ruled that the former testimony was admissible.

### B. RELEVANCE OF RECENT OVERT ACTS

Canty moved in limine to allow testimony on the possibility of the State filing another petition against Canty if he were to commit ROAs after release and Canty proposed a jury instruction on ROAs. Canty argued that expert testimony on the relationship between a potential ROA petition and the experts' evaluation of Canty's risk of recidivism was relevant. The State objected, arguing that the proffered evidence would only be relevant if Canty testified that he knew that he could face another commitment proceeding if he committed a ROA upon release. The trial court granted the motion on the condition that Canty must first lay a foundation showing that he had knowledge of the potential for a ROA petition. Canty did not lay this foundation.

### C. JURY INSTRUCTION – REPLACING "SEXUALLY VIOLENT PREDATOR" WITH "CRITERIA FOR CIVIL COMMITMENT"

Canty moved in limine to replace the term "'sexually violent predator'" with "'criteria for civil commitment'" throughout the jury instructions. 1 RP at 118. Canty argued that the term "'sexually violent predator'" was irrelevant to whether his alleged personality disorder causes him difficulty in controlling his behavior, leading to predatory acts of sexual violence. 1 RP at 119. Instead, Canty contended that the term was "emotionally charged" and prejudicial. 1 RP at 119. He relied on studies finding that jurors were more likely to commit a person if the trial court permitted use of the term "'sexually violent predator.'" 1 RP at 120.

The State objected, arguing that the term was relevant because the chapter the petition was filed under is titled "Sexually Violent Predator Law" and because the *Washington Practice: Washington Pattern Jury Instructions: Civil* (WPIs) use the term. 1 RP at 122. The State contended that no existing case law supported the motion. The State also noted that the jury would receive an instruction to decide the case on the evidence before them and not on their passions and prejudices.

The trial court denied the motion. It noted that the petition alleged that Canty was a sexually violent predator, that chapter 71.09 RCW defines the term, and that the WPIs use the term extensively. The trial court concluded that the studies Canty relied on did not provide a sufficient basis on which to grant the motion.

## II.  TRIAL TESTIMONY

### A.  EXPERT TESTIMONY

1.    CHRISTOPHER NORTH'S EXPERT TESTIMONY

The State's expert, North, a licensed psychologist with a Ph.D. in clinical psychology, evaluated Canty in 2015.  North diagnosed Canty with a personality disorder with antisocial and narcissistic features.  North updated his 2015 evaluation of Canty after meeting with Canty in May 2017 and reached the same diagnosis.  North opined that Canty's personality disorder causes him serious difficulty controlling his behavior and makes it likely he will engage in predatory acts of sexual violence if not confined in a secure facility.  North mentioned "sexual assault" of a stranger as an example of a "new predatory sex offense" that Canty was likely to commit if released.  4 RP at 520-21.  North relied on the following facts about Canty's prior conduct to support his opinion.

a.    CANTY'S CONDUCT IN CALIFORNIA

In 1996, police arrested Canty for attempted murder in California.  The victim of the attack rejected a sexual advance from Canty, and Canty stabbed the victim in the neck with a knife and threatened to kill him.  Canty was not charged with a crime based on the incident because the victim did not want to pursue the matter.

Approximately one month after the attempted murder arrest, Canty attacked ZB in California.  He saw ZB working in her yard, grabbed her hair, pushed her onto the ground, and rubbed his crotch.  ZB believed Canty was going to rape her.  She distracted Canty and was able to escape.  ZB called the police and they arrested Canty.  A jury convicted Canty of sexual battery,[3]

---

[3] Canty was charged with assault with intent to rape, but the jury acquitted Canty of that charge and instead found Canty guilty of the lesser included offense of sexual battery.

attempted kidnapping with sexual motivation, and false imprisonment. The trial court in the subject SVP proceeding admitted an abstract of the judgment and sentence on these prior convictions into evidence.

In 1998, while out on parole from the attack on ZB, Canty exposed his penis to a woman who had paid him to help her with chores around the house. Once Canty exposed his penis, the woman told Canty to leave, and he threatened to kill her in response. The woman called the police, but charges for the exposure were not filed. Instead, Canty returned to prison for a year because this uncharged conduct violated his parole terms.

In 1999, police arrested Canty for grabbing the buttocks of two 17-year-old girls in California. Canty was charged and arraigned on two counts of annoying a minor and two counts of sexual battery, but the prosecutor later dismissed the charges. Instead, Canty returned to prison for a year because this conduct violated his parole terms.

b.     CANTY'S CONDUCT IN WASHINGTON

Canty moved to Vancouver shortly after his release from custody in California on July 25, 2001. On August 9, while walking the streets of Battle Ground, Canty came across a small, frail woman with muscular dystrophy smoking a cigarette. They spoke briefly. Shortly thereafter, Canty knocked on the woman's door, pushed his way into her apartment, and sexually assaulted her. The woman called the police, who arrested Canty shortly after he left the woman's apartment. A jury convicted Canty of indecent liberties with forcible compulsion, burglary with sexual motivation, and second degree robbery. He served a 15-year prison sentence on those convictions. The trial court in this SVP proceeding admitted a certified copy of the judgment and sentence on these convictions into evidence.

6

c.      CANTY'S PRISON INFRACTIONS

Canty received 80 infractions while serving his prison sentences in California and Washington. Six of the infractions occurred between 2008 and 2011 while Canty was in the custody of Washington's Department of Corrections (DOC). The 6 infractions related to sexual misconduct, including indecent exposure and sexual harassment of correctional officers. Washington's DOC transferred Canty out of a sex offender treatment program and to a different prison because of his behavior toward a female staff member. Canty also received 3 infractions related to aggressive or violent conduct while in custody in Washington. While serving his sentences in California, Canty had 2 infractions for openly masturbating. During counseling for the 2 infractions, Canty said he could not help himself and that he masturbated "'10 times or more per day.'" 3 RP at 313. Additionally, while discussing possible civil commitment with a correctional counselor, Canty said he thought he was a danger to society.

2.      AMY PHENIX'S EXPERT TESTIMONY

Canty's expert, Phenix, a licensed psychologist with a Ph.D. in clinical psychology interviewed Canty in 2017. Phenix diagnosed Canty with a personality disorder with antisocial and narcissistic features. However, Phenix's conclusions on the impact of Canty's personality disorder on his behavior differed from North's conclusions. Unlike North, Phenix did not believe that Canty's personality disorder caused him serious difficulty in controlling his sexually violent behavior. Phenix also did not believe that it was likely Canty would commit another sexually violent offense if released.

Phenix testified to some of the details of Canty's prior conduct, including that Canty "very impulsively jumped over a fence and sexually assaulted" ZB, leading to convictions for sexual battery, attempted kidnapping, and false imprisonment. 5 RP at 684.

Canty's counsel asked Phenix if Canty would be deterred from committing new sexually violent offenses due to the possibility of civil commitment under a new petition if Canty committed a ROA. The State objected, arguing that the question violated the trial court's ruling on the motion in limine covering testimony about ROA petitions because there was no evidence that Canty knew about the ROA petitions. Canty argued that the testimony was proper because Phenix would lay a foundation by testifying that someone advised Canty about ROA petitions. However, during voir dire, Phenix testified that she did not discuss ROA petitions with Canty, and the only information she had about the issue was that Canty's counsel told her that Canty was aware of ROA petitions. Therefore, the trial court ruled that there was an insufficient basis for Phenix to testify about the deterrent effect of a possible ROA petition on Canty.

## B. ADMISSION OF CANTY'S VIDEOTAPED DEPOSITION

Canty did not testify at trial. However, the State played a redacted and shortened version of the State's videotaped deposition of Canty for the jury. In the videotaped deposition, Canty admitted to attacking ZB and to the 2001 attack in Washington.

Canty discussed the following relevant details about his attack on ZB in the video. Canty saw ZB and approached her in her yard thinking that he "would just jump the fence and grab her and . . . sexually offend against her, grope her." CP at 336 (alteration in original). He had the idea to attack ZB because he "didn't have any respect for her as a human being," and he "felt [he] needed to meet [his] immediate need of arousal." CP at 336. Canty "grabbed her by the hair,

8

threw her to the ground and then got behind her on her back and rode her." CP at 336. ZB said no, but Canty did not stop. He "picked her up off the ground and walked her . . . four steps, and then she broke loose and ran to her home." CP at 336. Shortly thereafter, the police arrested Canty.

C.  ZB'S PRIOR TESTIMONY IN THE CALIFORNIA PRELIMINARY HEARING

During the trial, Canty renewed his objections to admission of ZB's prior testimony from the 1996 preliminary hearing in California. The trial court orally ruled that ZB's testimony was admissible under ER 804(b)(1).

The State read portions of ZB's prior testimony from the 1996 preliminary hearing establishing the following relevant facts. ZB testified how she spelled her name, but that she also used a different last name. ZB was watering her garden one morning in 1996 when she saw Canty, a stranger to her, walking by. Canty grabbed her hair, pulled her backwards onto her knees, and covered her mouth with his hand. He straddled ZB from behind, and she could feel that his penis was hard as he pressed it against her back. Canty indicated that he did not want ZB to scream and then pulled her by her hair to a standing position. Canty grabbed and rubbed his crotch area, which ZB took to indicate that he wanted to have sexual relations. ZB feigned surprise at something and when Canty was distracted, she pushed him, ran into her house, and called the police. The police arrived about 10 minutes later and they subsequently had ZB identify Canty as the perpetrator. ZB also identified Canty in court during the 1996 preliminary hearing.

III. JURY INSTRUCTIONS

After the close of testimony, Canty noted that the jury instructions he proposed in limine, on replacing the term "sexually violent predator" with "criteria for civil commitment" and on the

possibility of a ROA petition, were no longer relevant given the trial court's rulings and the trial testimony. 6 RP at 817. As relevant here, Canty objected to the State's proposed instructions 4 and 8. And he took no exceptions to the jury instructions.

### A. JURY INSTRUCTION NO. 4 – SVP ELEMENTS

As given, jury instruction number 4 stated,

> To establish that Michael Canty is [an SVP], the State must prove each of the following elements beyond a reasonable doubt:
> (1) That Michael Canty has been convicted of a crime of sexual violence, namely Indecent Liberties with Forcible Compulsion and/or Burglary in the First Degree with Sexual Motivation;
> (2) That Michael Canty suffers from a personality disorder which causes serious difficulty in controlling his sexually violent behavior; and
> (3) That this personality disorder makes Michael Canty likely to engage in predatory acts of sexual violence if not confined to a secure facility.

CP at 467. Canty did not object to the first element of jury instruction 4. Canty did object to the wording of the second and third elements, arguing that they should include language about *a mental abnormality* or personality disorder based on 6A WPI 365.10, at 410 (Supp. 2017). The trial court ruled that the evidence did not support inclusion of the mental abnormality language.

### B. JURY INSTRUCTION NO. 8 – DEFINITION OF CRIMES OF SEXUAL VIOLENCE

The State's proposed jury instruction number 8 defined "'[s]exual violence' or 'harm of a sexually violent nature'" to include 11 crimes[4] and attempts to commit those crimes. CP at 403. Canty objected, first arguing that the instruction should include all enumerated crimes of sexual

---

[4] Three of the crimes were first degree rape, second degree rape by forcible compulsion, and indecent liberties by forcible compulsion. The other eight crimes were the following offenses if committed with sexual motivation: second degree murder, first degree assault, second degree assault, first degree kidnapping, second degree kidnapping, first degree burglary, residential burglary, and unlawful imprisonment.

violence, but subsequently arguing that it should only include crimes related to Canty's sexually violent offense convictions. The State objected to Canty's proposed alternative, arguing that it properly chose the 11 listed crimes because the note on the corresponding WPI said to include all potential sexually violent offenses that the evidence indicated Canty might commit if released.

The trial court ruled that the purpose of the jury instruction was to cover sexually violent crimes the person facing commitment was either charged with or convicted of and sexually violent crimes that person was "likely to commit in the future" if supported by the evidence. 7 RP Vol. 897. The trial court narrowed the definition of crimes of sexual violence to include only indecent liberties by forcible compulsion, first degree burglary with sexual motivation, residential burglary with sexual motivation, unlawful imprisonment with sexual motivation, and attempts to commit those 4 crimes. The trial court determined that North's testimony about the types of crimes and conduct that Canty is likely to commit if released provided a basis for the crimes listed in the instruction.

## IV. CLOSING ARGUMENT, VERDICT, AND COMMITMENT

During closing argument, the State elected the following crimes as the crimes of sexual violence for which Canty was convicted under chapter 71.09 RCW: indecent liberties with forcible compulsion and first degree burglary with sexual motivation. The State argued that the certified judgment and sentence for the 2001 convictions and testimony from both experts proved that Canty had prior convictions for indecent liberties with forcible compulsion and first degree burglary with sexual motivation. A unanimous jury found beyond a reasonable doubt that Canty was a SVP. The trial court committed Canty to the Department of Social and Health Services' custody for

11

control, care, and treatment pending a change in his personality justifying his release. Canty appealed.

## ANALYSIS

### I. ADMISSION OF ZB'S PRELIMINARY HEARING TESTIMONY

Canty argues that the trial court committed constitutional error by admitting ZB's prior testimony from an unrelated 1996 matter. He contends that the admission amounted to a constitutional error because the State did not prove that ZB was unavailable or that Canty had a sufficiently similar motive to cross-examine her at the prior preliminary hearing. He argues that the alleged constitutional error was not harmless. These arguments fail.

### A. LEGAL PRINCIPLES

Both the confrontation clause of the Sixth Amendment and ER 804(b)(1) bar the admission of previous testimony of an unavailable witness unless the defendant had a prior opportunity and similar motive to cross-examine the unavailable witness. *State v. Benn*, 161 Wn.2d 256, 265, 165 P.3d 1232 (2007); *Crawford v. Washington*, 541 U.S. 36, 68, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004). We review challenges alleging that the admission of prior testimony violates ER 804(b)(1) for an abuse of discretion. *Benn*, 161 Wn.2d at 265; *State v. Neal*, 144 Wn.2d 600, 609, 30 P.3d 1255 (2001).

A hearsay declarant is considered unavailable if he or she is absent from the current proceedings and the proponent was not able to procure his or her attendance. ER 804(a)(5). Even if the hearsay declarant is outside the subpoena power of the court, the proponent of the previous testimony must make a good faith effort to secure the voluntary attendance of the witness to

12

demonstrate that he or she is unavailable. *Rice v. Janovich*, 109 Wn.2d 48, 57, 742 P.2d 1230 (1987).

If the declarant is unavailable, the proponent must also show that the opposing party had an opportunity and similar motive to develop the declarant's testimony during the prior proceeding. ER 804(b)(1). However, "'similar motive' does not mean 'identical motive.'" *State v. DeSantiago*, 149 Wn.2d 402, 414, 68 P.3d 1065 (2003) (internal quotation marks omitted) (quoting *United States v. Salerno*, 505 U.S. 317, 326, 112 S. Ct. 2503, 120 L. Ed. 2d 255 (1992) (Blackmun, J., concurring)). The proponent meets its burden if it shows that the opposing party had "some motive to discredit" the testimony in both proceedings. *DeSantiago*, 149 Wn.2d at 415.

## B. HARMLESS ERROR

The State argues that any error was harmless because ZB's prior testimony was cumulative given the testimony of Canty and both experts on Canty's attack of ZB. Canty argues that the alleged constitutional error was not harmless because ZB's prior testimony "was the only evidence offered describing an offense that might qualify as a predatory act of sexual violence." Appellant's Opening Br. at 24-25. Canty also argues that ZB's account of the attack provided prejudicial details and that he could have undermined her account if given an opportunity to cross-examine her in the SVP proceeding. However, even if we assume without deciding that admission of ZB's prior testimony was constitutional error, we hold any error was harmless beyond a reasonable doubt.

1.       HARMLESS ERROR STANDARD OF REVIEW

Canty argues that the constitutional harmless error standard applies, and the State must show that the error was harmless beyond a reasonable doubt. Even if the constitutional harmless error standard applies, the State satisfies its burden of proof.

Constitutional error is harmless error if the reviewing court is convinced beyond a reasonable doubt that the error did not contribute to the verdict. *Benn*, 161 Wn.2d at 266; *State v. Thomas*, 150 Wn.2d 821, 845, 83 P.3d 970 (2004); *Neder v. United States*, 527 U.S. 1, 15, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999). For constitutional errors, the court reviewing whether the error was harmless beyond a reasonable doubt asks "whether any reasonable jury would have reached the same result in the absence of the tainted evidence." *Benn*, 161 Wn.2d at 266.

2.       ADMISSION OF ZB'S PRIOR TESTIMONY IS HARMLESS

Here, the details of Canty's attack from ZB's prior testimony were already before the jury through other untainted evidence, namely Canty's videotaped deposition testimony and North's expert testimony. Additionally, Phenix gave expert testimony on some of the details of Canty's sexual assault of ZB. While the trial court admitted the experts' testimony for the limited purpose of explaining the basis for their opinions of whether Canty was a SVP, Canty's videotaped deposition testimony was admissible as substantive, untainted evidence. Because Canty's description of the event mirrored ZB's, Canty's arguments are unpersuasive that the prior testimony provided prejudicial details or could have been undermined given the opportunity for cross-examination in the SVP proceeding. We hold that ZB's prior testimony was cumulative of Canty's untainted, videotaped deposition testimony about this sexual assault.

Moreover, the State elected Canty's 2001 convictions for indecent liberties with forcible compulsion and first degree burglary with sexual motivation as the sexually violent offense prior convictions satisfying the first prong of the to-convict instruction. The State argued that untainted evidence, namely the certified judgment and sentence for Canty's 2001 convictions for indecent liberties with forcible compulsion and first degree burglary with sexual motivation, proved the existence of those sexually violent prior convictions. Canty also admitted to some of the details of those 2001 convictions in his videotaped deposition testimony.

Therefore, Canty's argument that ZB's prior testimony was the only evidence of a prior sexually violent crime fails. We hold that a reasonable jury would have reached the same verdict in the absence of ZB's prior testimony. Accordingly, even if we assume without deciding that the trial court committed constitutional error, we hold that the State proved that the error was harmless beyond a reasonable doubt.

## II. JURY INSTRUCTIONS

Canty argues that the trial court committed constitutional error by refusing to instruct the jury on the possibility of a new petition if Canty committed a ROA after release. Under RCW 71.09.030(1)(e), the State can file an SVP petition if a person who has previously been convicted of a sexually violent offense and later is released from confinement commits a ROA. Canty argues that the trial court erred by refusing to instruct the jury regarding the ROA because without the instruction, he was unable to argue that he was less likely to reoffend because certain acts could subject him to future confinement. This argument fails.

## A. STANDARD OF REVIEW

Canty argues that this court reviews jury instructions de novo to determine whether the relevant legal standard would be manifestly apparent to the average juror reading the challenged instruction.[5] We reject Canty's argument.

The standard of review for a trial court's decision whether to give a jury instruction depends on the reason for the decision. *State v. Condon*, 182 Wn.2d 307, 315, 343 P.3d 357 (2015). "If the decision was based on a factual determination, it is reviewed for abuse of discretion." *Condon*, 182 Wn.2d at 315-16. A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds. *In re Det. of Post*, 170 Wn.2d 302, 309, 241 P.3d 1234 (2010). If, however, the trial court's determination of whether to give a jury instruction "was based on a legal conclusion, it is reviewed de novo." *Condon*, 182 Wn.2d at 316.

## B. ROA INSTRUCTION

Here, the trial court granted Canty's motion to allow testimony on ROAs on the condition that Canty must first lay a foundation showing that he had knowledge of the potential for a ROA petition. However, Canty failed to lay the proper foundation at trial, so the trial court ruled that there was an insufficient basis for testimony regarding the deterrent effect of a possible ROA petition. Because the trial court's decision not to give Canty's proposed instruction was due to insufficient evidence to support it, we review this alleged error for abuse of discretion. *Condon*, 182 Wn.2d at 315.

---

[5] *In re Detention of Urlacher* held that procedural and substantive due process do not require application of the "manifestly apparent" standard to review of jury instructions in SVP civil commitment trials. ___ Wn. App. ___, 427 P.3d 662, 669 (2018).

First, the record reveals that Canty likely failed to preserve this alleged error. Canty acknowledged on the record that his proposed jury instruction on ROAs was not relevant given the trial court's rulings and the trial testimony. As such, it appears that Canty withdrew his proposed ROA instruction based on a lack of supporting evidence at trial. Further, Canty took no exception to the failure to give his proposed instruction.

Even assuming Canty has preserved his objection to the failure to give his proposed ROA instruction, his argument fails.

The State argues that the trial court properly declined to give Canty's proposed ROA instruction and for support it relies on *In re Detention of Taylor-Rose*, 199 Wn. App. 866, 401 P.3d 357 (2017), *review denied*, 189 Wn.2d 1039 (2018). Canty replies that he had no burden to produce evidence supporting his proposed ROA instruction because the possibility of a ROA petition is an undisputed matter of law. We agree with the State.

"A trial court does not abuse its discretion when it refuses to give an instruction that is not supported by the evidence." *Taylor-Rose*, 199 Wn. App. at 886. *Taylor-Rose* is dispositive of the issue presented here. 199 Wn. App. at 886. In *Taylor-Rose*, we held that a trial court did not abuse its discretion by refusing to instruct the jury that the State could bring a new petition if Taylor-Rose committed a ROA following his release. 199 Wn. App. at 870, 885-86. The court based its holding, in part, on the fact that "there was no evidence presented at trial that Taylor-Rose would be less likely to reoffend because of the potential for new SVP petitions." *Taylor-Rose*, 199 Wn. App. at 886.

Similarly, Canty did not present any evidence at trial demonstrating that the potential for a new petition based on ROAs committed after release would deter him from committing new

17

sexually violent offenses. Moreover, Canty acknowledged that his proposed jury instruction on ROAs was not relevant given the trial court's rulings and the trial testimony. We hold that the trial court did not abuse its discretion.

C. "CRITERIA FOR CIVIL COMMITMENT" VS. "SEXUALLY VIOLENT PREDATOR"

Next Canty argues that the trial court erred when it declined to use the phrase "'criteria for civil commitment'" instead of "'sexually violent predator'" throughout the instructions. Appellant's Opening Br. at 34. We disagree.

The trial court denied Canty's motion in limine to replace the term "'sexually violent predator'" with "'criteria for civil commitment'" throughout the jury instructions. CP at 365. The trial court based that decision on the fact that the term "sexually violent predator" appears in the State's petition, chapter 71.09 RCW, and the WPI and on its determination that the studies Canty relied on to show that the term was unduly prejudicial did not provide a sufficient basis on which to grant the motion. 1 RP at 123. Therefore, the trial court's decision on Canty's proposed modification to the jury instructions is based on a legal determination, namely whether there was a sufficient legal basis for the proposed instruction. As such, we review the alleged error de novo. *Condon*, 182 Wn.2d at 315.

The trial court denied Canty's motion to use the phrase "criteria for civil commitment" because it concluded that the studies Canty relied on did not provide a sufficient basis on which to exclude the phrase "sexually violent predator." CP at 365. In reaching this conclusion, the trial court noted that the State's petition alleged that Canty was a SVP, that RCW 71.09.020(18) defines the term "sexually violent predator," and that the WPIs use the term extensively. The trial court correctly relied on the statutory language. Accordingly, we hold that the trial court did not err.

### III.  SUFFICIENT EVIDENCE

Canty argues that when measured against the jury instructions given, there was insufficient evidence that he was likely to engage in predatory acts of sexual violence if released.  We disagree.

### A.  LEGAL PRINCIPLES

We review whether evidence is sufficient to support civil commitment as a SVP under the criminal law sufficiency standard in the light most favorable to the State.  *In re Det. of Thorell*, 149 Wn.2d 724, 744-45, 72 P.3d 708 (2003).  Evidence is sufficient if a rational trier of fact could conclude that the State proved beyond a reasonable doubt that the person facing commitment was a SVP.  *Thorell*, 149 Wn.2d at 744-45.  We defer to the trier of fact on determinations of witness credibility and evidentiary weight.  *In re Det. of Sease*, 149 Wn. App. 66, 80, 201 P.3d 1078 (2009).

To civilly commit a person as a SVP, the State must prove that the person facing commitment (1) "has been convicted of or charged with a crime of sexual violence," (2) he or she "suffers from a mental abnormality or personality disorder," and (3) the mental abnormality or personality disorder "makes the person likely to engage in predatory acts of sexual violence if not confined in a secure facility."  RCW 71.09.020(18); *In re Det. of Belcher*, 189 Wn.2d 280, 283, 287, 399 P.3d 1179 (2017).  These three criteria are explicitly set forth in the statutory definition of a SVP.  RCW 71.09.020(18).

### B.  LIKELIHOOD OF PREDATORY ACTS OF SEXUAL VIOLENCE

Canty argues that there was insufficient evidence to meet the third prong of the elements instruction because neither expert opined that Canty was likely to commit one of the offenses listed in jury instruction number 8.  Canty bases that argument on his contention that jury instruction number 8 is the "law of the case."  Appellant's Opening Br. at 35; Appellant's Reply Br. at 20.

We reject Canty's argument and hold that sufficient evidence supports the third prong of the elements instruction.

The elements instruction, jury instruction number 4, largely tracked the statutory definition. The third prong of the instruction required the State to prove, beyond a reasonable doubt, that Canty's personality disorder made him "likely to engage in predatory acts of sexual violence if not confined to a secure facility." CP at 467.

Here, both experts testified that Canty had a personality disorder with antisocial and narcissistic features. Additionally, North opined that Canty's personality disorder makes it likely that he will engage in predatory acts of sexual violence if not confined in a secure facility. North mentioned "sexual assault" of a stranger as an example of a "new predatory sex offense" that Canty was likely to commit if released. 4 RP at 520-21. While Phenix testified that she did not believe it was likely Canty would commit another predatory act of sexual violence if released, the jury was free to discredit that testimony and credit North's testimony instead. We therefore hold that there was sufficient evidence that Canty's personality disorder made him likely to engage in predatory acts of sexual violence if not committed to a secure facility.

## IV. JUDICIAL COMMENT ON THE EVIDENCE AND BURDEN SHIFTING

Canty argues that the trial court violated his constitutional due process rights under the Fourteenth Amendment and article IV, section 16 of the Washington State Constitution. The first element that the State must prove to show a person is an SVP is that the respondent "has been convicted of or charged with a crime of sexual violence. RCW 71.09.020(18). Canty contends that jury instruction number 4 amounted to a judicial comment on the evidence that improperly shifted the burden of proof on whether Canty had a prior conviction for a crime of violence. He

20

argues that the instruction erroneously instructed jurors that his prior convictions automatically qualified as crimes of sexual violence. We disagree.

"We review the instructions de novo to determine if the trial court has improperly commented on the evidence." *Taylor-Rose*, 199 Wn. App. at 874. "Article IV, section 16 of the Washington Constitution states, 'Judges shall not charge juries with respect to matters of fact, nor comment thereon, but shall declare the law.'" *Taylor-Rose*, 199 Wn. App. at 874. "A trial court makes an improper comment on the evidence if it gives an instruction that (1) conveys to the jury his or her personal attitude on the merits of the case or (2) instructs the jury that matters of fact have been established as a matter of law." *Taylor-Rose*, 199 Wn. App. at 874. Jury instructions do not amount to a judicial comment on the evidence if they accurately state the law. *State v. Brush*, 183 Wn.2d 550, 557, 353 P.3d 213 (2015); *Taylor-Rose*, 199 Wn. App. at 874.

*Taylor-Rose* is dispositive. 199 Wn. App. at 874-76. In *Taylor-Rose*, we rejected the same argument Canty makes here. 199 Wn. App. at 874, 876. We held that "[a] crime that is expressly listed in the definition of 'sexually violent offense' in RCW 71.09.020(17) necessarily also qualifies as a 'crime of sexual violence.'" *Taylor-Rose*, 199 Wn. App. at 876. Therefore, the challenged jury instruction in *Taylor-Rose*, which defined crimes of sexual violence to include a specific crime enumerated under RCW 71.09.020(17), accurately stated the law and did not constitute a judicial comment on the evidence. 199 Wn. App. at 874, 876. Because the jury instruction did not amount to an improper judicial comment, it also did not relieve the State of its burden of proof. *See Taylor-Rose*, 199 Wn. App. at 876.

Here, jury instruction number 4 required that the State prove beyond a reasonable doubt that Canty had a prior conviction for "a crime of sexual violence, namely Indecent Liberties with Forcible Compulsion and/or Burglary in the First Degree with Sexual Motivation." CP at 467. Both offenses enumerated under the first prong of the elements instruction, "indecent liberties by forcible compulsion" and "sexually motivated" "burglary in the first degree," are enumerated under RCW 71.09.020(17). Accordingly, under *Taylor-Rose*, jury instruction number 4 accurately stated the law, did not constitute a judicial comment on the evidence, and did not relieve the State of its burden of proof. 199 Wn. App. at 874-76. We hold that the trial court did not err in giving instruction number 4.

## V. CONCLUSION

We reject Canty's arguments. We hold that any error in admitting ZB's prior testimony was harmless because it was cumulative of Canty's videotaped deposition testimony. We also hold that the trial court properly declined to give Canty's proposed ROA instruction because no evidence supported it. Further, we hold that there is no legal basis on which to exclude the term "sexually violent predator" from the jury instructions. We also hold that North's testimony was sufficient evidence that Canty had a personality disorder making it likely that he would commit a

No. 50573-8-II

predatory act of sexual violence if released.  Finally, we hold that the trial court did not make an improper comment on the evidence.  Accordingly, we affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

JOHANSON, J.

We concur:

MAXA, C.J.

LEE, J.